In re the MARRIAGE OF Patricia
A. FALL and Danny G. Fall.

Upon the Petition of

Patricia A. Fall, Petitioner–
Appellant/Cross–
Appellee,

And concerning

Danny G. Fall, Respondent–
Appellee/Cross–
Appellant.

No. 97–2109.

Court of Appeals of Iowa.

Feb. 24, 1999.

Steven H. Shindler and Stacey N. Warren of Smith, Schneider, Stiles, Hudson, Serangeli, Mallaney & Shindler, P.C., Des Moines, for appellant.

David A. Johnson of Johnson & Lane, Knoxville, for appellee.

Heard by SACKETT, C.J., and STREIT and MAHAN, JJ.

SACKETT, C.J.

Petitioner-appellant Patricia A. Fall appeals and respondent-appellee Danny G. Fall cross-appeals challenging the economic provisions of a decree dissolving their nearly twenty-year marriage. Patricia contends (1) she should have been given a greater portion of inheritances and gifts from Danny's parents; (2) the district court should not have awarded Danny a portion of her retirement account; and (3) she should have been awarded trial attorney fees. Patricia also asks for appellate attorney fees. Danny, on cross-appeal, contends the district court (1) discounted the amount of debts he was ordered to pay, and (2) failed to require Patricia to account for assets she depleted during the parties' separation period. We affirm as modified on appeal and affirm on cross-appeal.

Danny and Patricia married in 1978. At the time, Patricia held bachelor's and master's degrees and was employed as a physical education teacher by the Knoxville Community School District. Danny held a two-year degree and was selling real estate. At the time of the dissolution, Patricia, fifty years of

age, was yet employed by the Knoxville Community School District. Danny, then fifty-four, was winding up the business of a family coal mining company where he had worked since 1972. The couple had no children. Both worked hard during the marriage and maintained a conservative lifestyle. Their earnings were similar and generally used for living expenses. Both are in reasonably good health, though Patricia has some limitations as a result of a fall.

The parties agreed to the division of certain personal property. The district court divided certain other property and debts, giving Danny equities of about $1,000,000 and Patricia equities of about $650,000. The home of the parties was ordered sold and the proceeds divided. The district court ordered Patricia's retirement account in IPERS be divided when the fund was paid out using a fraction that gave Danny one-half of the benefits accrued in the account during the marriage. The district court determined Danny should have $548,910 in gifts from his parents set aside to him and Patricia should have about $60,000 in gifts from Danny's parents set aside to her. The district court reserved to Patricia her tort claim not limited to defamation, invasion of privacy, and casting facts in a false light. Each party was ordered to pay his or her own attorney fees.

■ Patricia challenges the allocation of Danny's gifted and inherited assets. Iowa Code section 598.21(2) provides, in part, gifts received by either party prior to or during the course of the marriage are not subject to property division unless the refusal to divide the property is inequitable to the other party or the children. Section 598.21(2) is substantially a codification of the premise established by earlier case law that property inherited by or gifted to one marriage partner is not subject to division unless the failure to do so would be unjust. *See In re Marriage of Thomas,* 319 N.W.2d 209, 211 (Iowa 1982); *In re Marriage of Byall,* 353 N.W.2d 103, 105–06 (Iowa App.1984). In *Thomas,* the supreme court delineated a number of factors which might bear on a claim inherited or gifted property should be divided. These include:

(1) contributions of the parties toward the property, its care, preservation or improvement;

(2) the existence of any independent close relationship between the donor or testator and the spouse of the one to whom the property was given or devised;

(3) separate contributions by the parties to their economic welfare to whatever extent those contributions preserve the property for either of them;

(4) any special needs of either party;

(5) any other matter which would render it plainly unfair to a spouse or child to have the property set aside for the exclusive enjoyment of the donee or devisee.

*Thomas,* 319 N.W.2d at 211. The court went on to say:

Other matters, such as the length of the marriage or the length of time the property was held after it was devised or given, though not independent factors, may indirectly bear on the question for their effect on the listed factors. Still other matters might tend to negative [sic] or mitigate against the appropriateness of dividing the property under a claim that it falls within the exception.

*Id.*

■ Patricia challenges the district court's decision to set aside to Danny $548,910 in gifts from his parents and not give her a portion of Danny's undistributed entitlement from his deceased mother's trust. Patricia advances the parties' net worth totals $2,010,012.22. She supplies a proposed allocation of assets that would result in her receiving $1,039,069.35 and Danny receiving $970,942.87 of their total net worth. Though not contesting the district court finding Danny received substantial gifts from his parents, she argues certain factors support her theory the gifts should not be set aside to Danny but should be shared equally with her.

Patricia also asks, in addition to the $1,039,069.35 she requests, she share in an undistributed inheritance from Danny's mother that was not included in her computation of the parties' net worth.

Danny contends the district court's assessment of his gifts is correct. He advances the gifts totaled $455,000 and, allowing a six percent return, they totaled $611,625 at the time of dissolution. He contends six percent is a conservative rate of return, and the gifts increased in value as investments, not through an active effort on his or Patricia's part.

Patricia advances the district court failed to correctly assess the couple's decision to transfer all their assets into a revocable living trust for protection and tax purposes. The trust, established in 1994 and revoked by Danny after the dissolution petition was filed, gave each party full power over the trust and the right to remove up to one-half the assets. Patricia contends establishing the trust showed the couple's intent to consolidate their assets and give each a one-half interest therein. She argues the transfer was a gift, one to the other, of any assets of the respective *donor*.

In *In re Marriage of Wertz*, 492 N.W.2d 711 (Iowa App.1992), we overruled previous case law and specifically said, on assessing whether gifted or inherited property should be divided, "Whether the inheritance or gifts were placed in joint ownership is not controlling." *Id.* at 714; *see also In re Marriage of Higgins*, 507 N.W.2d 725, 727 (Iowa App. 1993); *see also In re Marriage of Hoffman*, 493 N.W.2d 84, 89 (Iowa App.1992). Patricia contends we should not apply *Wertz* because transferring assets to a trust is not the same. We disagree. The manner a married couple titles or holds inherited or gifted property is not a controlling factor in assessing its treatment as a gift or inheritance under section 598.21(2).

In addressing Patricia's challenge, we give weight to her close relationship with Danny's parents. We consider, too, the couple made a $60,000 gift to Patricia's mother. We note the gifts from Danny's family were generally made in Danny's name and equal gifts were made at the same time to his sister. We consider the gifts were generally put in savings and did not enhance the couple's standard of living. Danny's mother's trust remains undistributed and did not enhance their standard of living. We consider, too,

the gifts were a part of an estate plan for Danny's parents, which included his sister. *See In re Marriage of Vanderpol*, 529 N.W.2d 603, 605 (Iowa App.1994); *In re Marriage of Dahl*, 418 N.W.2d 358, 360 (Iowa App.1987).

The district court's allocation of gifted and inherited property is equitable. *See* Iowa Code § 598.21(2). Finding no inequity, we affirm the district court on this issue.

■■■ Patricia also contends Danny should not have received part of her pension. Retirement plans should be considered in framing the financial clauses of a dissolution decree. *See In re Marriage of Voss*, 396 N.W.2d 801, 803 (Iowa App.1986). The dissolution court must recognize the future retirement needs of divorcing persons. *In re Marriage of Williams*, 421 N.W.2d 160, 167 (Iowa App.1988) (Donielson, J., specially concurs); *Byall*, 353 N.W.2d at 106.

Patricia has reported her IPERS account value at $45,485.46. Danny has not challenged this value. He contends the district court correctly divided it; however, on his cross-appeal, he asks for several minor modifications in the manner it is divided.

■■■ Pension rights are not easily valued. *See Voss*, 396 N.W.2d at 804. Consequently, the preferred method of valuation of these benefits is, as here, to divide a plan through a qualified domestic relations order which, in essence, separates the pension rights into two separate accounts. *In re Marriage of McLaughlin*, 526 N.W.2d 342, 344 (Iowa App.1994). This makes valuation of the pension unnecessary, allows the court to allocate other assets equitably, and assures similar retirement security for both spouses. *Id.* However, such a division of pension benefits is not an absolute requirement. The allocation of a pension, like the allocation of all other property interests, comes only after the pension has been considered in the overall scheme of an equitable division.

We recognize if Patricia's IPERS account were to be valued, its worth would be greater than the contributions she made. The IPERS account will greatly enhance her retirement.

While we have rejected Patricia's claim for an additional portion of Danny's inherited and gifted property, we consider the fact Danny leaves the marriage with a substantially greater net worth than Patricia in assessing his need for retirement benefits. We modify the decree to provide Patricia's IPERS account shall be hers alone. Having done so, it is unnecessary to address Danny's request for modification of its division.

Danny, on cross-appeal, also contends the district court undervalued certain debts allocated to him. We have considered his arguments and disagree. He further contends the district court failed to debit Patricia for the assets she unaccountably spent during their separation.

Both parties claim the other spent marital assets without authorization prior to the finalization of the divorce. They ask these expenditures be considered in the property division.

■ The date of the dissolution is the only reasonable time when an assessment of the parties' net worth should be undertaken. *Locke v. Locke*, 246 N.W.2d 246, 252 (Iowa 1976); *Schantz v. Schantz*, 163 N.W.2d 398, 405 (Iowa 1968). We value property for division purposes at its value at the time of the dissolution. *See Locke*, 246 N.W.2d at 252. It is the net worth of the parties at the time of trial which is relevant in adjusting property rights. *In re Marriage of Muelhaupt*, 439 N.W.2d 656, 661 (Iowa 1989); *In re Marriage of Moffatt*, 279 N.W.2d 15, 20 (Iowa 1979). Expenditures made during a separation should, in some cases, be considered in making an equitable distribution. *See Williams*, 421 N.W.2d at 163–65. However, we find nothing here that justifies doing so, and we find no reason to disagree with the dissolution court on this issue.

■ Patricia contends she should have been awarded trial attorney fees. We review for an abuse of discretion. *Muelhaupt*, 439 N.W.2d at 663. Patricia has received substantial property and is gainfully employed. We affirm the trial court on this issue.

We award no appellate attorney fees. Costs on appeal are taxed one-half to each party.

**AFFIRMED AS MODIFIED ON APPEAL; AFFIRMED ON CROSS–APPEAL.**

VOGEL, J., takes no part.