## IN THE COURT OF APPEALS OF IOWA

No. 16-1321
Filed June 7, 2017

IN RE THE MARRIAGE OF NICOLE MARIE FLUENT
AND GRANT JEROME FLUENT

Upon the Petition of
**NICOLE MARIE FLUENT,**
Petitioner-Appellant,

And Concerning
**GRANT JEROME FLUENT,**
Respondent-Appellee.

_____

Appeal from the Iowa District Court for Woodbury County, Edward A. Jacobson, Judge.

Nicole Marie Fluent appeals the decree dissolving her marriage to Grant Jerome Fluent. **AFFIRMED AS MODIFIED.**

Tara S. Vonnahme of Vonnahme Law, P.C., Sioux City, for appellant.

Theodore E. Karpuk of Law Office of Theodore E. Karpuk, Sioux City, for appellee.

Considered by Mullins, P.J., and Bower and McDonald, JJ.

**MULLINS, Presiding Judge.**

Nicole Marie Fluent appeals the decree dissolving her marriage to Grant Jerome Fluent. We affirm as modified.

## I. Background Facts and Proceedings

Nicole and Grant were married in August 2009. In November 2015, Nicole filed a petition for dissolution. Prior to trial, the parties executed a pretrial stipulation that resolved most issues between them, except for the division of the portion of Grant's retirement account earned during the marriage—sums totaling approximately $125,000. Nicole requested an equalization payment from the account in the amount of approximately $46,500.[1] Grant requested the entirety of the account, in part as a set aside to him for a $74,000 inheritance he had received during the marriage from his mother's estate and certain premarital money he brought into the marriage. In its decree, the district court adopted the pretrial stipulation and granted the requested set aside but ordered Grant to pay Nicole $13,000 from the retirement account or some other source to do equity between the parties. The district court stated the set aside was for both inherited and premarital property. Nicole appeals.

## II. Scope and Standard of Review

We review cases tried in equity, such as dissolution cases, de novo. Iowa R. App. P. 6.907; *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015). We give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but we are not bound by them. Iowa R. App. P. 6.904(3)(g). Prior cases, though helpful, have little precedential value

---

[1] Nicole also requested an equalization payment on account of Grant's lawn mower.

because we must base our decision primarily on the particular circumstances of the parties presently before us. *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983). We accord the trial court considerable latitude in making factual determinations and will disturb the ruling only when there has been a failure to do equity. *Gust*, 858 N.W.2d at 406.

### III.    Analysis

On appeal, Nicole argues the district court abused its discretion in setting aside any sums to Grant, as the inheritance money he received was not traceable at the time of trial. Nicole does not identify what assets are at issue, proffer a valuation for those assets, or otherwise indicate what sums she asks this court award to her. Of note, while the parties dispute the equitability of setting aside premarital property to Grant, the pretrial stipulation governed the distribution of all of their premarital assets. Further, in its decree, the district court does not specify what premarital property it set aside or the value it attributed to premarital property. Upon our review of the record, the only property clearly disputed by the parties at trial was the marital portion of Grant's retirement account and the proper treatment of the inheritance Grant received. This is the dispute we address on appeal.

Iowa Code section 598.21(6) (2015) provides:

> Property inherited by either party or gifts received by either party prior to or during the course of the marriage is the property of that party and is not subject to a property division . . . except upon a finding that refusal to divide the property is inequitable to the other party or to the children of the marriage.

Nicole does not dispute that Grant's mother intended the inheritance for Grant alone. *See In re Marriage of McDermott*, 827 N.W.2d 671, 681-82 (Iowa

2013) (considering whether the gifted and inherited property was intended for both parties). Instead, she argues the set aside was improper because the money no longer exists and is not traceable to any asset held by the parties.

On appeal, Grant does not identify any asset he seeks to be set apart to him that exists as a direct result of the money he inherited. He makes no claim that his inheritance was paid into his retirement account, which is the only asset subject to the court's distribution after adopting the parties' pretrial stipulation. In fact, there is no specific identification or itemization of where the inherited sums went.[2] *See In re Marriage of Goodwin*, 606 N.W.2d 315, 321 (Iowa 2000) (setting aside to the wife "the identifiable assets purchased with the insurance proceeds" she inherited); *In re Marriage of Van Brocklin*, 468 N.W.2d 40, 45 (Iowa Ct. App. 1991) (finding a factor mitigating against dividing the inherited property was that "the inherited assets [we]re easily identified and were not commingled with the marital assets").

To the contrary, Grant generally testified the money went to mortgage payments and marital expenses.[3] Beyond this vague testimony, Grant has

---

[2] Nicole states on appeal some of the inherited sums were used to purchase a lawn mower that Grant valued at $1350 at trial.

[3] Specifically, Grant testified:

> Q. Okay. Now let's move to the sale of the Martha Street house, the house that you had owned jointly with your mother and gave two-thirds of the proceeds to other relatives. A. Yes.
> Q. On the proceeds that you kept from the Martha Street house, can you identify specifically what on there [Form B, listing the parties' assets] has contributions from the proceeds of the Martha Street house? A. Most of it went towards the mortgage. . . . So any moneys that went into the checkbook were paid to household expenses related to the [marital] house.
> . . . .
> Q. Can you please take a moment and look through all of the exhibits that you brought to court today in preparation of trial and show

provided no accounting for where or how the money was actually spent.[4]  *See In re Marriage of Nevins*, No. 11-1541, 2012 WL 3590057, at *5 (Iowa Ct. App. Aug. 22, 2012) (setting apart only the $25,000 used as a down payment on a home but "declin[ing] to set aside any additional amount attributable to appreciation or interest because the evidence in the record does not provide a basis to calculate which portion of those funds remain" and the party "provided no accounting for how that money was spent"); *In re Marriage of Edwards*, No. 01-0430, 2002 WL 1331884, at *3 (Iowa Ct. App. June 19, 2002) (affirming the district court's refusal to grant a credit for certain gifted funds where the court could not ascertain the intent of the donor, "no evidence" was provided regarding how the funds were divided and expended, and the money was commingled with marital funds).

Grant voluntarily used his inheritance for the benefit of himself and his family, and there is no indication that any amount of that money remains.  *See generally In re Marriage of Meek-Duncomb & Duncomb*, No. 10-0814, 2011 WL 768831, at *6-7 (Iowa Ct. App. Mar. 7, 2011) (finding it inequitable to require the husband to reimburse the wife the approximate $80,000 she received as an

---

me where you can document any of those funds being contributed to any marital asset?  A.  I don't think there's anything in here that shows where the funds went.  Like I said, they're all in my checkbook statement.  It also shows that it went toward household expenses, because I've bought nothing elaborate since we bought that house.

[4] Grant cites numerous cases in support of his claim that an offset from his retirement account is warranted.  Predominately, in these cases, the asset or amount sought to be set aside is still identifiable or in existence.  *See, e.g.*, *In re Marriage of Reynolds & Dunlap*, No. 12-1456, 2013 WL 1453250, at *1-2 (Iowa Ct. App. Apr. 10, 2013) (addressing dispute where the money was used to purchase the marital home and the disputed asset was the home); *Goodwin*, 606 N.W.2d at 321 (setting aside money placed in an annuity, IRA, and directly applied to a mortgage); *In re Marriage of Higgins*, 507 N.W.2d 725, 726-27 (Iowa Ct. App. 1993) (setting aside $6388.82 placed in a credit union account, minus withdrawals, and $11,000 in improvements made to the marital home).

inheritance and voluntarily spent on vacations and other family expenses, while awarding certain expenditures that were traceable, such as a camper purchased with inherited funds and awarded to the husband); *In re Marriage of Soloski*, No. 05-0310, 2006 WL 623583, at *5 (Iowa Ct. App. Mar. 15, 2006) (including the inherited and gifted property of the couple as marital sums where, in relevant part, the money had been "commingled and used to support the parties' family"). This is not a circumstance where Nicole was uniquely benefitted by the inheritance. *See In re Marriage of Harberts*, 492 N.W.2d 435, 437 (Iowa Ct. App. 1992) (affirming a reimbursement award for $2300 of gifted money to the wife where the gift had been primarily spent for the benefit of the husband during an approximate one-year marriage). Nor is this a circumstance where Nicole is retaining some sort of good purchased with the money. *See In re Marriage of Passick*, 375 N.W.2d 284, 285 (Iowa Ct. App. 1985) (finding the wife should be refunded the $6000 of inherited monies she put into the husband's chiropractic business). The money was, instead, purportedly used to maintain the parties' basic standard of living. *See In re Marriage of Fall*, 593 N.W.2d 164, 167 (Iowa Ct. App. 1999) (noting, while setting aside the gifts and inheritances to the husband, that "the gifts were generally put in savings and did not enhance the couple's standard of living" and other sums "remain[ed] undisturbed and [ha]d not enhance[d] their standard of living").

Ultimately, Grant requests that we award him $74,000 worth of marital funds from his retirement account for money he inherited and voluntarily spent during the marriage, for the benefit of both himself and his family, without providing any accounting for these expenditures or identifying any asset (beyond

the marital home)[5] into which the monies were allegedly spent. On these facts, we find that allocating $74,000 of a marital asset solely to Grant would be inequitable to Nicole. *See* Iowa Code § 598.21(6). Having found in our de novo review that marital property should not be used to fund an inheritance set aside to Grant, we must determine an equitable division of the property at issue. *See In re Marriage of Campbell*, 623 N.W.2d 585, 586 (Iowa Ct. App. 2001) ("The partners to a marriage are entitled to a just and equitable share of the property accumulated through their joint efforts.").

Based on the values agreed to by the parties, Nicole received approximately $79,581.40[6] pursuant to their stipulation. She also accepted responsibility for $27,639.57 in debt incurred during the marriage and $4510.11 predating the marriage. Nicole also left with $9160.62 in premarital monies in her retirement account. Grant received approximately $53,510.02[7] pursuant to the stipulation, plus the increase in his employee stock ownership plan (ESOP) (Nicole valued the increase at $18,607 and Grant at $6890). Grant accepted responsibility for $29,361.62 in debt incurred during the marriage. Grant also retained premarital assets totaling $112,140.52.[8] In its decree, the district court did not address or resolve the disputed valuations of the parties' property.

---

[5] The record reflects the sale of the marital home netted only $22,000. Accordingly, insofar as Grant claims the entirety of his inheritance went to the marital home, only $22,000 in value remained, and Grant received $11,000 per the parties' agreement.

[6] The following marital assets are included: $76,494.13 (retirement account, or $85,657.75 minus $9160.62), $1000 (bank account), and $2087.27 (equity in Nicole's car based on her valuation of the car, or $17,000 minus $14,912.72).

[7] The following marital assets are included: $50,510.02 (employee stock ownership plan, or $76,953.06 minus $26,443.04), $1250 (equity in car), $750 (equity in car based on Grant's valuation), and $1000 (bank account).

[8] Grant had, before the marriage, $85,697.48 in his retirement account and $26,443.04 in his ESOP.

Regardless, excluding premarital debts and assets assigned to each party by agreement and other nominal or disputed sums,[9] Nicole and Grant each had, respectively, net awards of approximately $51,941.83 (not including the $12,000 Grant attributes to Nicole's condominium on appeal) and $31,038.40 (not including the additional $11,717 Nicole attributes to Grant's ESOP or $4881 she attributes to his life insurance policy).

According to the district court's order, Nicole requested approximately $46,500 of the $125,000 in Grant's retirement account accumulated during the marriage. The district court awarded her $13,000. On appeal, Nicole makes no specific request. We determine an award of the remaining $33,500 from her requested sum is equitable. By awarding Nicole the full $46,500, the result is an award of approximately $98,441.83[10] to Nicole and $109,500[11] to Grant. In addition, the parties are retaining premarital monies by agreement—Nicole in the amount of $9160.62 and Grant in the amount of $112,140.52. *See In re Marriage of Miller*, 552 N.W.2d 460, 465 (Iowa Ct. App. 1996) (noting "premarital asset[s] [are] not otherwise set aside like gifted and inherited property" but are rather "a factor to consider" when "making an overall division"). We find the

---

[9] These unaddressed sums include: each parties' household furnishings (which had generally comparable value), the disputed value of Grant's life insurance (Nicole claimed $5000; Grant claimed $118.60, stating a loan had been taken on the policy that left it with only a nominal value), and the disputed value of the condominium Nicole purchased after the parties separated (Nicole claimed $0; Grant claimed $13,000 at trial and $12,000 on appeal). Additionally, each party received half of the proceeds obtained from the sale of the parties' marital home.

[10] We reach this number by combining the approximate $51,941.83 net award Nicole received under the stipulation with the $46,500 she receives from the marital portion of Grant's retirement account.

[11] We reach this number by combining the approximate $31,038.40 net award Grant received under the stipulation with his remaining portion of the retirement account, $78,500.

higher award to Grant is equitable in recognition that he did bring additional sums to the marriage, a union that was of relatively short duration.[12]

Unless the parties otherwise agree, within ninety days of issuance of the procedendo in this case, Grant shall either (1) pay to Nicole the additional sum of $33,500 or (2) at his expense, take all steps necessary to obtain a Qualified Domestic Relations Order that shall award to Nicole said sum plus future allocable income accumulations minus allocable losses or expenses until distribution to Nicole pursuant to the retirement plan's provisions.

We do not disturb any other aspect of the district court's decree.

**AFFIRMED AS MODIFIED.**

---

[12] In reaching this outcome, we also considered Grant's claim Nicole used $4000 of marital sums for the down payment on her condominium, retained approximately $1000 of the parties' tax refund, and received and retained an approximate $15,500 bonus in February 2016 following her initiation of this action.