**IN THE COURT OF APPEALS OF IOWA**

No. 17-1569
Filed December 5, 2018

**IN RE THE MARRIAGE OF CHRISTINE Y. FREUDENBERG
AND MARK WILLIAM FREUDENBERG**

**Upon the Petition of
CHRISTINE Y. FREUDENBERG,**
        Petitioner-Appellant/Cross-Appellee,

**And Concerning
MARK WILLIAM FREUDENBERG,**
        Respondent-Appellee/Cross-Appellant.

_____

        Appeal from the Iowa District Court for Black Hawk County, Linda M.

Fangman, Judge.

        Christine Freudenberg appeals, and Mark Freudenberg cross-appeals, a

decree of dissolution of marriage. **AFFIRMED AS MODIFIED.**

        Kevin D. Engels of Correll, Sheerer, Benson, Engels, Galles & Demro, PLC,

Cedar Falls, for appellant.

        Terry D. Parsons of Olsen & Parsons Law Firm, Cedar Falls, for appellee.

        Heard by Tabor, P.J., and Mullins and Bower, JJ.

**MULLINS, Judge.**

Christine Freudenberg, n/k/a Christine Seres, appeals, and Mark Freudenberg cross-appeals, from the spousal-support and property-distribution provisions of a dissolution decree. Christine challenges the spousal-support award and property-distribution provisions as inequitable. Mark argues that if this court modifies any of the economic provisions of the dissolution decree, the entire decree must then be reevaluated and adjusted accordingly. Christine seeks an award of appellate attorney fees.

## I.     Background Facts and Proceedings

On March 3, 2001, Christine and Mark married. Christine was thirty-eight years old and Mark was forty. No children were born of this marriage. Both parties have children from prior marriages[1] who at various times lived with Christine and Mark. Christine filed for dissolution in November 2016.

At the time of the marriage, Christine worked at PDCM Insurance. She quit her job five or six months after marrying Mark. Christine has a high school diploma and has attended some computer classes. She has worked as a secretary, word processor, and in the information technology (IT) field since she graduated from high school. She began working at RSM Insurance in May 2002. She maintained this employment through the time of trial. Her job requires her to attend professional improvement courses for work, but none of the classes have provided her credit toward a post-secondary degree. At the time of trial, Christine worked part-time (twenty hours per week) and mainly from home as an IT consultant for

---

[1] Christine has one son and Mark has one son and two daughters.

RSM. Her main task consists of social engineering testing, which requires her to make phone calls. Christine's gross monthly salary is approximately $3300 and she is eligible to earn an end-of-the-year bonus and spot bonuses throughout the year. On occasion, Christine works full time at RSM and sought a full-time position within the company.

Prior to this marriage, Christine worked at Waterloo Industries, where she had a retirement account. After Waterloo Industries shut down, she rolled the account into a new account at PDCM. After leaving PDCM, she then rolled the account into a 401(k) (American Funds), which she still had at the time of trial. Christine added to the retirement account during the five to six months she worked at PDCM after the initiation of the marriage, but after she left PDCM and rolled the funds into the 401(k), she added no other funds to the account. At the time of the marriage, Christine also had a TIAA/CREF account from a previous employer. She made no contributions to that account over the course of the marriage. Through her work at RSM, Christine has an additional 401(k) (Fidelity).[2]

At the time of the marriage, Mark had worked for John Deere for approximately ten years as a drive-train engineer. At the time of trial, he was the manager of the drive-train engineering division. Before starting at John Deere, he received a degree in mechanical engineering, and while in the United States Navy, he received experience and skills relating to mechanical engineering. At the time of trial, Mark's annual base salary was $136,488.[3] Mark also earns bonuses based

---

[2] At the time of trial, Christine's accounts had the following balances: American Funds, approximately $26,440; TIAA/CREF, approximately $108,000; and Fidelity, approximately $77,459. The record does not reveal the time-of-marriage values of the accounts.
[3] Mark's gross monthly salary is $11,374.

on the company's productivity. His 2016 bonus was approximately $35,000. Through John Deere, Mark had a pension, health savings account (HSA), and savings and investment plan (SIP).[4] Mark's pension account is a defined benefits plan consisting of funds contributed solely from John Deere. Mark's pension was fully vested at the time of marriage, but the expected benefit continues to increase with his years of service. Mark established the SIP and HSA accounts after his marriage to Christine, and began participation in an investment fund (Deere Millionaire's Club) with other couples that worked at Deere. Each participant contributed an amount of money to invest in certain stocks and then received shares of the investment.[5]

After the parties married, Christine sold her house and she and her son lived with Mark and his son in Mark's farmhouse for a short time. They used the proceeds from the sale of Christine's house as a down payment on the current family home, to purchase furniture, and to establish a college-savings account for Christine's son.

During their marriage, Christine deposited her paycheck into her own bank account while Mark deposited his into their joint account. Mark paid most of the household expenses during the marriage and the majority of the utilities. Christine's employer covered one-half of the couple's internet fees since most of her job duties required her to make phone calls. Christine identified her main hobby as shopping on QVC, estimating that she made $38,000 in purchases over

---

[4] At the time of trial, the balance of the HSA was approximately $15,552 and the SIP plan was approximately $258,000, both accumulated after the initiation of the marriage.
[5] At the time of trial, the value of Mark's share of the fund was $1253.

the last three years, minus any returns. She owed QVC for past purchases at the time of trial. One of Mark's hobbies is hunting and he hunted in the Bloomfield area. The couple purchased farm land in that area in 2012 for Mark's hunting.

Christine filed a petition for dissolution of marriage on November 15, 2016. At trial, Christine and Mark contested the equitable distribution of property and spousal support. The court entered the dissolution decree on September 1, 2017. The court awarded Christine assets in the amount of $418,823 and made her responsible for liabilities of $6429, resulting in a property award of $412,394. Included in the property award was the marital home, the bank accounts in her name, and the entirety of her interest in her retirement accounts. Mark was awarded assets totaling $193,164 and liabilities totaling $8290 for a total property award of $184,874. This award included the farm land near Bloomfield, the entire interest in his Deere Millionaire's Club Fund, and the entirety of his John Deere pension. The court awarded Mark's pension solely to him "in light of the overall property settlement." The property settlement included the division of Mark's John Deere SIP account pursuant to a qualified domestic relations order (QDRO) using the *Benson*[6] formula. The court awarded no attorney fees to either party. Christine appeals and Mark cross-appeals.[7]

---

[6] *See In re Marriage of Benson*, 545 N.W.2d 252, 257 (Iowa 1996).

[7] After the filing of the dissolution decree, Christine filed motion to enlarge, amend, or modify the decree pursuant to Iowa Rule of Civil Procedure 1.904(2) on issues unrelated to this appeal. The district court granted Christine's motion after she filed her notice of appeal.

**II.     Standard of Review**

Dissolution-of-marriage actions are tried in equity, thus our review is de novo. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). "Accordingly, we examine the entire record and adjudicate anew the issue of the property distribution." *Id.* "[W]e give weight to the factual findings of the district court, [but] we are not bound by them." *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). We give the trial court significant latitude in determining spousal support. *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015). We will affirm a district court determination unless "there has been a failure to do equity." *Mauer*, 874 N.W.2d at 106.

**III.     Analysis**

**A.     Retirement Plans**

"In dissolution-of-marriage cases, marital property is to be divided equitably considering the factors outlined in Iowa Code section 598.21([5]) [(2016)]. Equitable distribution depends upon the circumstances of each case. An equitable division is not necessarily an equal division." *In re Marriage of Hansen*, 733 N.W.2d 683, 702 (Iowa 2007) (citations omitted). What is fair and equitable depends upon the particular circumstances of the case and parties. *In re Marriage of Keener*, 728 N.W.2d 188, 193 (Iowa 2007). "Equality is, however, often most equitable; therefore, we have repeatedly insisted upon the equal or nearly equal division of marital assets." *McDermott*, 827 N.W.2d at 682.

While the court "may assign varying weight to premarital property, . . . [it] should not automatically award it to the spouse who owned the property prior to the marriage." *Id.* at 678. "Property brought into the marriage by a party is merely

a factor to consider by the court, together with all other factors, in exercising its role as an architect of an equitable distribution of property at the end of the marriage." *Id.* (quoting *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006)).

In her brief, Christine questions the trial court's valuations of certain property, but concedes on appeal her only challenge to the property distribution concerns the court's decision to award Mark the entirety of his John Deere pension plan. She contends the court should have divided both Mark's pension and her Fidelity account using the *Benson* formula. She further argues Mark should be required to elect the joint and survivor annuity option under his pension and name her as the recipient. On his cross-appeal, Mark maintains that if we grant the relief requested by Christine, we should make adjustments to the retirement assets awards to Christine in order to accomplish an equitable property division.

"Retirement plans should be considered in framing the financial clauses of a dissolution decree" and the trial court "must recognize the future retirement needs of divorcing persons." *In re Marriage of Fall*, 593 N.W.2d 164, 167 (Iowa Ct. App. 1999). Under Iowa law, pensions are characterized as marital assets, "subject to division in dissolution actions just as any other property." *Benson*, 545 N.W.2d at 255. "There are two principal types of private pension plans: defined benefit plans and defined contribution plans. These plans are similar in that both may be funded by contributions made either solely by the employer (noncontributory) or by both the employer and the employee (contributory)." *Id.* at 254. The courts have accepted two "methods of dividing pension benefits: the present-value method and the percentage method." *Sullins*, 715 N.W.2d at 248.

However, "a division of pension benefits is not an absolute requirement. The allocation of a pension, like the allocation of all other property interests, comes only after the pension has been considered in the overall scheme of an equitable division." *Fall*, 593 N.W.2d at 167.

Mark enrolled and became fully vested in the pension plan, a defined-benefit plan funded only by John Deere, before the marriage. Mark did not contribute any funds into the plan, but his plan benefits increased during the marriage. Neither party presented evidence of the value of the John Deere pension at any time during the marriage or the value at the time of trial. Neither party presented evidence of the value of Christine's premarital retirement accounts at the time of the marriage or the increases in the value of those assets during the marriage. The only evidence of the values of those accounts are dated near the time of trial.

Ultimately, in its decree, the court awarded Christine the entirety of her TIAA-CREF, Fidelity, and American Funds plans. It divided Mark's John Deere SIP plan using the *Benson* formula. It also awarded Mark the entirety of his John Deere pension. The court stated in its reasoning for this distribution that it

> specifically chose to award to Chris her Fidelity 401k, her TIAA-CREF, and her American Funds Retirement Assets not because the Court believes they are premarital assets not to be divided but, rather, as part of the overall property settlement in this case. In addition, the Court specifically chose to leave the John Deere pension with Mark in light of the overall property settlement. In addition, had the Court divided the John Deere Pension using the Benson Formula, the Court would have also divided the Fidelity 401k, the TIAA-CREF, and the American Funds using the Benson Formula.

The property division without Mark's pension and SIP fund is weighted toward Christine. Further, with the SIP being divided between the parties, Mark's pension is his only other significant retirement asset. It

> would be inappropriate to award the *entire* pension to [Mark] simply because [Christine] is receiving [a large portion] of the other marital property, without regard to the respective values of that pension and the parties' other assets. However, it would also be inappropriate to *divide* that pension without taking into account the allocation of the other assets.

*In re Marriage of O'Brien*, No. 11-1551, 2012 WL 7656669, at *2 (Iowa Ct. App. Sept. 21, 2012). During this sixteen-year marriage, Christine's premarital retirement accounts have increased fortuitously, presumably significantly. Such increases should normally have been considered by the district court in making an equitable property distribution. *In re Marriage of Fennelly*, 737 N.W.2d 97, 103–04 (Iowa 2007). But, our record is devoid of the values of those accounts at the time of the marriage. Further, an equitable distribution could have included the premarital value of Christine's retirement assets. Upon our de novo review, the lack of a record of the value of Christine's premarital retirement accounts or any changes in the values of those accounts during the marriage, and the lack of record of the valuation of the John Deere pension, make it impossible to mathematically evaluate whether the district court's distribution of those assets is equitable. Although we are sympathetic to the district court's efforts to achieve equity with the limitations of the evidence it had before it, we determine a modification in the property distribution is necessary.

On this record, we believe the better approach is to divide the John Deere pension using the *Benson* formula, and to divide equally the increases in the

values of Christine's TIAA/CREF, American Funds, and Fidelity retirement funds which occurred during the marriage.[8] The values of the TIAA/CREF, American Funds, and Fidelity accounts at the time of marriage are awarded to Christine.[9] With these adjustments, using the values and distribution plan otherwise ordered by the district court but excluding all retirement and pension accounts, Christine will receive net assets of approximately $197,114 and Mark will receive net assets of approximately $184,874. By way of the *Benson* formula, Mark will receive value attributable to premarital employer contributions and earnings in his John Deere pension, and each party will share one-half the value attributable to the period of marriage. Christine will receive the value of her retirement accounts attributable to premarital contributions and earnings, and each party will share one-half the value of the increases during the marriage. With these modifications, we find the net overall distribution of assets and liabilities is equitable. Mark's attorney shall prepare the QDRO for the pension and Christine's attorney shall prepare the QDROs for the retirement accounts in her name, following the directions outlined by the district court in paragraph number seven of its decree.[10]

Christine also requests to be designated as the "surviving spouse" through a joint and survivor annuity under Mark's pension plan. "[T]he circumstances under which that designation should occur depend on the facts of each case and whether the allowance of survivorship rights effectuates an equitable distribution

---

[8] This will include the additional contributions Christine made to the Fidelity account during the marriage.

[9] As previously indicated in this opinion, those values are not in the record but we assume each fund can provide account values as of the date of marriage.

[10] Distribution of the John Deere SIP account remains as ordered by the district court.

of the parties' assets." *In re Marriage of Duggan*, 659 N.W.2d 556, 560 (Iowa 2003). Though "spouse survivorship rights may be awarded to ensure the spouse receives a share of the pension plan in the event of the employee spouse's untimely death", such an award is not "normal and typical." *In re Marriage of Dow*, No. 17-0534, 2018 WL 1858299, at *7 (Iowa Ct. App. Apr. 18, 2018). Requiring Mark to choose a spousal survivorship benefit for Christine would reduce the benefit to which he is otherwise entitled under the *Benson* formula. In order to ensure he receives the entire amount of the property awarded to him, Mark should be allowed to assign the full amount of any survivor benefits as he see fits. *See In re Marriage of Klinghammer*, No. 02-0112, 2003 WL 21070599, at *4 (Iowa Ct. App. May 14, 2003). Therefore, we decline Christine's request to require Mark to select a joint and survivor annuity option and name her as beneficiary.

B.      Spousal Support

Christine challenges the spousal-support award of $1000 per month for thirty-six months as inequitable and inadequate both in amount and duration. She contends the court should have ordered traditional alimony rather than rehabilitative considering the length of the marriage, her age, Mark's earnings compared to hers, and her lack of intent to return to school. She further challenges the trial court's use of $79,000 as her salary if she worked full time as she has never earned that amount of money and only worked full time for two short periods of time with her current employer. She requests Mark pay $1750 per month for seven years or, in the alternative, $1000 per month plus twenty-five percent of Mark's annual bonus for seven years.

In its award of spousal support, the court reasoned:

In this particular case the Court has considered that the parties were married for 16 years, a moderate-length marriage. During this second marriage of both parties, Chris has worked part-time by her own choice throughout the marriage. Chris makes approximately $40,000 a year working part-time and makes over $79,000 working full time at this particular job. While the testimony is she would prefer to stay working with her current employer, this is a choice she is making which is not reflective of her earning capacity. The testimony supports rehabilitative alimony because there are classes and tests Chris can study for and prepare for to become more marketable. In addition, Chris has at her disposal [her son's] 529 account in the amount of $17,000 which she could use for educational training for herself since [her son] is in the military full time in California. The Court is also considering the property distribution in finding rehabilitative alimony is appropriate.

Though "[o]ur review of the spousal support award is de novo[,] we afford the district court considerable latitude in making a spousal support determination and '[w]e will disturb that determination only when there has been a failure to do equity.'" *In re Marriage of Witherly*, 867 N.W.2d 856, 859 (Iowa Ct. App. 2015) (third alteration in original) (quoting *In re Marriage of Anliker*, 694 N.W.2d 535, 540 (Iowa 2005)). "Alimony may also be awarded to a spouse in addition to the distribution of property." *Hansen*, 733 N.W.2d at 702. It is not an absolute right; whether the court awards alimony and the amount awarded depends on the specific circumstances of each case. *Id.* at 704. There is no fixed or mathematical formula to apply in determining spousal support. *Mauer*, 874 N.W.2d at 107. Rather, the courts must equitably award spousal support by considering all the factors delineated in Iowa Code section 598.21A(1). *Id.* These factors, in pertinent part, include:

> a. The length of the marriage.
> b. The age and physical and emotional health of the parties.
> c. The distribution of property made pursuant to section 598.21.

d. The educational level of each party at the time of marriage and at the time the action is commenced.

e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.

g. The tax consequences to each party.

. . . .

j. Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21A(1).

"Alimony is awarded to accomplish one or more of three general purposes." *In re Marriage of O'Rourke*, 547 N.W.2d 864, 866 (Iowa Ct. App. 1996). Of those three, two are pertinent to the current case. "*Rehabilitative alimony* serves to support an economically dependent spouse through a limited period of education and retraining. Its objective is self-sufficiency. . . . *Traditional alimony* is payable for life or for so long as a dependent spouse is incapable of self-support." *Id.* (citations omitted). "The amount of alimony awarded and its duration will differ according to the purpose it is designed to serve." *Id.* at 866–67. Traditional spousal support is often granted in a long-term marriage and particularly when the parties agree one spouse should stay home to raise children, as the resulting absence from the workplace can result in substantial economic consequences. *See Gust*, 858 N.W.2d at 410. "Generally speaking, marriages lasting twenty or more years commonly cross the durational threshold and merit serious consideration for traditional spousal support." *Id.* at 410–11. "The goal of

rehabilitative spousal support is self-sufficiency and for that reason 'such an award may be limited or extended depending on the realistic needs of the economically dependent spouse.'" *In re Marriage of Becker*, 756 N.W.2d 822, 826 (Iowa 2008) (quoting *In re Marriage of Francis*, 442 N.W.2d 59, 64 (Iowa 1989)). "We consider alimony and property distribution together in assessing their individual sufficiency. They are neither made nor subject to evaluation in isolation from one another." *In re Marriage of Hettinga*, 574 N.W.2d 920, 922 (Iowa Ct. App. 1997).

Here, the parties were married for a moderate amount of time, sixteen years. The parties are close in age and both are in relatively good physical health. There were no children of the marriage, though both parties had children from previous marriages who lived with them at varying points during their marriage. The parties disagreed as to whether it was a mutual arrangement that Christine would only work part time, but the trial court found it was her own choice to remain part time with her current employer. Christine also chose to limit her job search for full-time employment to her current employer. The court consequently determined her choices were not reflective of her earning capacity. Because of these choices and the availability of classes and tests she could take to increase her marketability, the court found rehabilitative alimony for a short period of time was appropriate.

Upon our de novo review, and applying the factors contained in section 598.21A(1), we believe Christine is entitled to an award of spousal support. We agree with the trial court that Christine's current salary does not reflect her earning capacity given her experience, ability to take classes, and choice to both remain employed part time and only search for full-time work through her current

employer. Though Christine may wish to remain with her current employer, her part-time position is not reflective of her earning capacity, and she "has an obligation to earn up to her capacity, 'even though she might have to take a job she did not prefer.'" *In re Marriage of Robert*, No. 11-0876, 2012 WL 2122310, at *7 (Iowa Ct. App. June 13, 2012) (quoting *In re Marriage of Wegner*, 434 N.W.2d 397, 399 (Iowa 1988)). Considering Christine's current income, her realistic income potential, and her current expenses, we determine the current spousal support award of $1000 per month for thirty-six months does not fail to do equity, and will provide for Christine during a transitional period of time to become self-sufficient at her maximum earning capacity. We therefore affirm the district court's spousal-support determination.

C. Appellate Attorney Fees

Christine requests appellate attorney fees in the amount of $3000. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). We consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* In consideration of these factors, we award $1500 in appellate attorney fees to Christine.

Costs on appeal are assessed equally between the parties.

## IV. Conclusion

We affirm the district court's decree, but modify it with respect to the distribution of the parties' retirement accounts. We modify the decree to divide Mark's John Deere pension using the *Benson* formula, and to divide equally the increases in the values of Christine's TIAA/CREF, American Funds, and Fidelity

retirement funds which occurred during the marriage.  We award the values of the TIAA/CREF, American Funds, and Fidelity accounts at the time of marriage to Christine.  We decline Christine's request to require Mark to select a joint and survivor annuity option on his pension and name her as beneficiary.  We affirm the court's award of spousal support.  We award Christine $1500 in appellate attorney fees.  Costs on appeal are assessed equally between the parties.

**AFFIRMED AS MODIFIED.**