**IN THE COURT OF APPEALS OF IOWA**

No. 17-1298
Filed December 5, 2018

**IN RE THE MARRIAGE OF KIMBERLEY IRENE BARNS
AND PHILLIP TYLER BARNS**

**Upon the Petition of
KIMBERLEY IRENE BARNS,**
    Petitioner-Appellee,

**And Concerning
PHILLIP TYLER BARNS,**
    Respondent-Appellant.

_____

    Appeal from the Iowa District Court for Linn County, Christopher L. Bruns,

Judge.

    Phillip Barns challenges the economic provisions of the decree dissolving

his marriage to Kimberly Barns.  **AFFIRMED.**

    Natalie H. Cronk of Cronk & Waterman, PLC, Iowa City, for appellant.

    Allison M. Heffern and Kristen A. Shaffer of Shuttleworth & Ingersoll,

P.L.C.., Cedar Rapids, for appellee.

    Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

Phillip (Phil) Barns appeals the decree dissolving his marriage to Kimberly Barns. He challenges the trial court's award of spousal support to Kimberly as inequitable in both amount and duration and challenges the disposition of post-martial growth in the value of premarital assets. Kimberly requests an award of appellate attorney fees.

**I.      Background Facts and Proceedings**

Kimberly and Phil were married July 20, 1996, when Kimberly was twenty-six and Phil was forty. The marriage produced three children: JTB (born in 2002), EAB (born in 2005), and APB (born in 2007). Kimberly and Phil met when they both worked at the same hospital in San Bernardino, California. Kimberly was a full-time labor-and-delivery nurse; Phil was an emergency room physician. At the time of their marriage, they lived in Long Beach. Kimberly obtained her Bachelor's degree in nursing five months after the initiation of the marriage.

In late summer 1996, Phil accepted a position at Mercy Hospital in Cedar Rapids. The couple bought a home in Cedar Rapids, where Phil continued to live at the time of trial. In 1997, while working at Mercy Hospital in Cedar Rapids, Phil also began working at Mercy Hospital in Dubuque. Phil left his position at Mercy in Cedar Rapids in 1998 and continued to work part time in Dubuque. In 1999, he joined Great River Medical Center in Burlington. The couple bought an additional home in Nauvoo, Illinois and split their time between the two homes, depending on Phil's work schedule.

In the early 2000s, Phil and his father began raising bison at his father's farm in Illinois to market as a healthier alternative to red meat. Kimberly assisted

the business, selling the meat at farmers' markets. The bison business was never profitable and was dissolved in 2013. Additionally, prior to their marriage, Phil had purchased a home in Lee County for his mother to use as a school. He retained ownership of this home throughout the marriage and at the time of trial. Phil's father died in 2010 and Phil and his sister are the sole heirs to their father's estate, which includes their father's original farm and his interest in a farm Phil and his father purchased together.

After moving to Iowa, Kimberly initially worked full time as a labor-and-delivery nurse at Mercy Hospital in Cedar Rapids. After less than a year, she reduced to part time. Kimberly further reduced her hours after the birth of JTB. She continued working as a nurse until six months after EAB was born, at which time she did not have any other steady employment and became mainly a stay-at-home mother.

In 2006, Phil left Great River Medical Center for a position at Mercy Hospital in Iowa City. He generally worked more than forty hours per week along with work associated with the bison business, while Kimberly provided the majority of the day-to-day care for the children. In 2008, their Cedar Rapids home burned down and they sold the Nauvoo home. The family lived in a trailer on the Cedar Rapids property while the house was rebuilt on the same lot. Kimberly acted as the general contractor for rebuilding the home, which took nearly two years to complete.

In 2010, Kimberly started working as an assistant directress at Cedar Valley Montessori, where the youngest child attended at the time. The other two children had attended there before going to school. Kimberly initially worked twenty-five

hours per week while the children were in school, which eventually increased to thirty-five hours. She earned approximately eleven dollars per hour. In 2014, she obtained a part-time position as an RN at Mercy in Cedar Rapids, where she continued to work at the time of trial. She typically worked thirty to thirty-five hours with a minimum of twenty hours guaranteed. Kimberly also continued to occasionally pick up shifts at Cedar Valley. If she worked forty hours per week, she believed she would earn approximately $53,000.00 per year.

Phil worked at Mercy in Iowa City until February 2017. He then started working at Finley Hospital in Dubuque as the director of the emergency department. He continued to work at Finley at the time of trial. He earns $180.00 per hour with a minimum of 1728 hours per year, in addition to shift differentials, incentives and bonuses. He calculated his gross annual income as $354,646.00.

The relationship between Kimberly and Phil broke down in 2013. Kimberly announced to Phil that she wanted to dissolve the marriage in February 2013 but remained in the marital home where the atmosphere was strained and the parties slept in different rooms. She moved out at the end of November or beginning of December and moved into a rental in Marion with the children. She continued to reside in this house at the time of trial. Phil remained in the Cedar Rapids home.

Kimberly filed a petition for dissolution of marriage in August 2013. At the trial in April 2017, the court heard from both parties and two experts presented by Phil: an accountant who opined on a reasonable financial settlement and a co-parenting expert.[1] The report of Kimberly's expert witness on spousal support was

---

[1] The court also heard from a neighbor who has known the family for twenty years and two family acquaintances who knew the family through Scouts and Montessori.

admitted by stipulation. The district court entered the decree dissolving the marriage in June, in which it awarded Kimberly and Phil joint legal custody of the children, granted Kimberly physical care, and allowed Phil visitation and custodial access. The court ordered Phil to pay child support.[2] The court ordered Kimberly to maintain health insurance for the children, and Phil to maintain a life insurance policy with Kimberly as the beneficiary until his spousal-support obligation ends. The court ordered Phil to pay $7000.00 per month in spousal support to continue for nine years. Further, after carefully identifying what the court considered to be marital property, the court awarded Kimberly a net property distribution of $1,467,568.48 and awarded Phil a net property distribution of $1,465,852.60.[3] The court's findings and rationale for the property distribution are extensive. In addition to those distributions, premarital property was awarded to the respective owner at its value at the time of marriage and each party retained inherited property interests. The appreciation of premarital assets during the course of the marriage was included as marital assets in the property distribution amounts listed above.

Phil appeals only the trial court's award of spousal support and the disposition of post-martial growth in the value of premarital assets. Kimberly requests an award of appellate attorney fees.

---

[2] Phil must pay $2287.66 per month for the three children. The amount will decrease to $2020.36 when there are two children to support and $1485.79 when there is only one child to support.

[3] These are the values entered after the parties' post-decree motions pursuant to Iowa Rule of Civil Procedure 1.904(2).

## II.     Standard of Review

Dissolution proceedings are tried in equity, therefore the standard of review is de novo. *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). We give weight to the trial court's findings of fact, especially when considering witness credibility but are not bound by them. Iowa R. App. P. 6.904(3)(g). We give "the trial court considerable latitude" relating to spousal support and will only disturb its order "when there has been a failure to do equity." *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015).

## III.     Analysis

### A.     Spousal support

Phil challenges the award of spousal support to Kimberly as inequitable in both amount and duration. He argues the trial court failed to consider the parties' respective ages in its determination of support and contends the age difference places each in a different position in their ability to earn future income. Further, he argues Kimberly's ability to obtain gainful employment in the nursing field within a month of seeking employment illustrates her absence from the workplace throughout the marriage does not hinder her earning potential. Phil requests either a reduction in the obligation or the elimination of the support award entirely.

The trial court ordered Phil to pay spousal support to Kimberly in the amount of $7000.00 per month for nine years and characterized the award as traditional alimony. The trial court reasoned:

> Going forward, the parties will have Phil's anticipated income of $354,646 and Kim's earning capacity of $53,000. Each of the parties will have very significant net assets as a result of the property division detailed . . . below. Kim argues the court should award her $5,000 per month in alimony for nine years or until one of the parties

dies. Phil argues that the court should allow only $1,250 per month for three years for alimony because Kim can use her share of the marital assets to support her lifestyle prior to retirement. Neither party explains whether they would characterize the alimony award as rehabilitative alimony or traditional alimony.

Phil's requested relief would not be consistent with the lifestyle the parties had prior to their separation. They were previously able to enjoy an extremely comfortable life while accumulating versus dissipating their assets. Phil's request would require Kim to dissipate her assets. . . .

. . . .

. . . . Because Phil has much less time to reposition himself for retirement after this divorce, the court needs to account for the fact that the property distribution will have put Phil at a relative disadvantage when he reaches retirement age. At that point, Phil will have to live on his assets (both retirement and non-retirement investments), his social security, and any pensions he is eligible to receive. Phil will have little time to rebuild his retirement assets, although he already has earned a greater social security benefit than Kim and he will have more net income than Kim with which to rebuild his retirement assets.

Case law provides that "whether to award spousal support lies in the discretion of the court, that we must decide each case based upon its own particular circumstances, and that precedent may be of little value in deciding each case." *Gust*, 858 N.W.2d at 408. In deciding whether to grant spousal support, the court must consider all the factors under Iowa Code section 598.21A(1) (2013) and the factors "cannot be considered in isolation from each other." *Id.* The factors, in pertinent part, include:

a. The length of the marriage.
b. The age and physical and emotional health of the parties.
c. The distribution of property made pursuant to section 598.21.
d. The educational level of each party at the time of marriage and at the time the action is commenced.
e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and

> the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.
>
> f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.
>
> g. The tax consequences to each party.
>
> . . . .
>
> j. Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21A(1).

In this case, the trial court awarded Kimberly traditional spousal support. The court typically awards traditional alimony in "long-term marriages where life patterns have largely been set and the earning potential of both spouses can be predicted with some reliability." *In re Marriage of Kurtt*, 561 N.W.2d 385, 388 (Iowa Ct. App. 1997). The purpose of traditional alimony "is to provide the receiving spouse with support comparable to what he or she would receive if the marriage continued" and "is ordinarily of unlimited or indefinite duration." *Gust*, 858 N.W.2d at 408 (quoting *In re Marriage of Hettinga*, 574 N.W.2d 920, 922 (Iowa Ct. App. 1997)).

Here, the length of the marriage, nearly twenty-one years, meets the "durational threshold [to] merit serious consideration for traditional spousal support." *Id.* at 411. There is nothing in the record which indicates either Kimberly or Phil suffer from any physical or emotional issues which would affect their health. However there is a significant age difference between the parties, fourteen years. *See* Iowa Code § 598.21A(1)(b). Phil is much closer to retirement age than Kimberly, though he did not testify to any definite retirement plans. Both Kimberly and Phil are educated. However Phil's education is more advanced. With

"marriages of relatively long duration, '[t]he imposition and length of an award of traditional alimony is primarily predicated on need and ability.'" *Gust*, 858 N.W.2d at 411 (quoting *In re Marriage of Wendell*, 581 N.W.2d 197, 201 (Iowa Ct. App. 1998)). The measurement "for determining need has been the ability of a spouse to become self-sufficient at 'a standard of living reasonably comparable to that enjoyed during the marriage.'" *Id.* (quoting Iowa Code § 598.21A(1)(f)). To determine need, "we focus on the earning capability of the spouses, not necessarily on actual income." *Id.*

Though Kimberly was working less than full time at the time of trial, the court found her testimony credible that if she were to work full-time, she could earn approximately $53,000.00. Further, the trial court found Phil's annual income was $354,646.00, based upon his own child-support calculation. The difference between Kimberly's earning capacity and Phil's employment income is significant, with Phil's income being six times greater. There is nothing in the record that provides this disparity will change while both parties are working. Additionally, though Kimberly can obtain a full-time position to receive income closer to her earning capacity, the record provides she will not be able to reach a level of self-support "at a standard of living reasonably comparable to that [she] enjoyed during the marriage," without an award of spousal support. *See* Iowa Code § 598.21A(1)(f). Therefore, spousal support is appropriate to allow Kimberly a standard of living comparable to that she enjoyed during the marriage. The trial court found that "even an award of $7,000 per month in alimony leaves Phil in a far superior financial position than Kim." Upon our de novo review and the

application of the section 598.21A(1) factors, we cannot say that this award was inequitable.

With respect to duration, "an award of traditional spousal support is normally payable until the death of either party [or] the payee's remarriage." *Gust*, 858 N.W.2d at 412. However, Phil is closer to retirement age than Kimberly. "[R]etirement plans should be considered in framing the financial clauses of a dissolution decree" and "[t]he dissolution court must recognize the future retirement needs of divorcing persons." *In re Marriage of Fall*, 593 N.W.2d 164, 167 (Iowa Ct. App. 1999). Kimberly acknowledged that Phil would reach retirement age much sooner than her and she was agreeable to ending spousal support when he attained full retirement age. The trial court recognized the age disparity and Phil's likely retirement within the next ten years, resulting in less time to prepare and rebuild for retirement after the dissolution and its effects on his assets. Further, the trial court found that Phil would likely need to continue to work for at least some time after the dissolution in order to meet his child-support obligations but once he retires, he would no longer be able to afford the spousal-support payments. Due to the contentious nature of the parties' behavior, the trial court set spousal support for a set number of years, nine, rather than until the designation of Phil's "retirement," seeking to reduce any potential for conflict about whether or when Phil has "retired." Based upon these findings, the court held that a spousal support award of $7000.00 per month for nine years was appropriate. Upon our de novo review, we cannot say that the trial court's award of spousal support for nine years was inequitable under the circumstances and we therefore affirm the spousal-support award.

B.      Property Distribution

Phil contends the court's decision to divide the appreciation that occurred during the marriage for stock and a home he purchased before the marriage was inequitable. He argues Kimberly did not contribute to either asset in any way and it was therefore inequitable to treat the appreciation as a marital asset. Kimberly asserts that both the appreciation in value during the marriage and the premarital value of both assets should have been included in the trial court's distribution.

"All property of the marriage that exists at the time of the divorce, other than gifts and inheritances to one spouse, is divisible property." *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006). This "includes not only property acquired during the marriage by one or both of the parties, but property owned prior to the marriage by a party." *Id.* (quoting *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005)). When "considering accumulations to premarital assets, we do not limit our focus to the parties' direct contributions to the increase." *Wendell*, 581 N.W.2d at 199. Instead, we "consider the contributions of each party to the overall marriage, as well as all other factors." *Id.*; *see* Iowa Code § 598.21(5). "Financial matters make up only a portion of a marriage, and must not be emphasized over other contributions in determining an equitable contribution." *Id.* "[M]arriage does not come with a ledger" and "[e]ach person's total contributions to the marriage cannot be reduced to a dollar amount." *In re Marriage of Fennelly*, 737 N.W.2d 97, 103–04 (Iowa 2007). Further, "many contributions are incapable of calculation, such as love, support, and companionship." *Id.* at 104.

Here, both parties contributed in countless ways to the marriage. While no one disagrees that Phil provided the financial base for the marriage, Kimberly also contributed to the marriage by, among other things, providing the majority of the child care, acting as the general contractor overseeing the construction of their house after fire destroyed their previous marital home, and assisting with the bison business. Phil conceded in his testimony that the home was not an inherited asset, which he initially asserted. Therefore, it was proper for the trial court to include it within the divisible estate and "the date of trial [was] the most appropriate date to value assets." *In re Marriage of Campbell*, 623 N.W.2d 585, 588 (Iowa Ct. App. 2001). In determining an equitable division, the premarital status of both the home and stocks was only one of several factors the court needed to consider pursuant to section 598.21(5). The court was free to "place different degrees of weight" on that status but could "not separate the [house and stocks] from the divisible estate and automatically award" them to Phil. *Sullins*, 715 N.W.2d at 247. "Nor do we find it appropriate when dividing property to emphasize *how* each asset appreciated—fortuitously versus laboriously—when the parties have been married for nearly fifteen years." *Fennelly*, 737 N.W.2d at 104. The trial court ultimately treated only the appreciation of the home and stocks as marital assets for property distribution purposes. On our de novo review and considering the length of this marriage and all other relevant factors, we affirm the trial court's property distribution of these assets.

C.     Appellate Attorney Fees

Kimberly requests appellate attorney fees of at least $10,000.00. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *In*

*re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). We consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* Given Phil's relative superior ability to pay, his lack of success in this appeal and Kimberly's need to defend, we award Kimberly appellate attorney fees in the amount of $7500.00.

**AFFIRMED.**