# IN THE COURT OF APPEALS OF IOWA

No. 18-0369
Filed May 1, 2019

IN RE THE MARRIAGE OF BRYANT WILLIAM AYALA
AND LAURA WALKER AYALA

Upon the Petition of
**BRYANT WILLIAM AYALA,**
        Petitioner-Appellant,

And Concerning
**LAURA WALKER AYALA,**
        Respondent-Appellee.

_____

        Appeal from the Iowa District Court for Polk County, William P. Kelly, Judge.


        Bryant Ayala appeals the property division provisions in the dissolution of marriage decree. **AFFIRMED.**


        Andrew B. Howie and James R. Hinchliff of Shindler, Anderson, Goplerud & Weese, PC, West Des Moines, for appellant.

        Ryan D. Babich of Babich Goldman, PC, Des Moines, for appellee.


        Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**BOWER, Judge.**

Bryant Ayala appeals the property division provisions in the district court's decree dissolving his marriage with Laura Ayala. He claims the court should have set aside additional amounts to him as premarital assets and erred in its valuation of some property. We affirm the court's decree.

## I.    Background Facts  & Proceedings

Bryant and Laura were married on July 9, 2001. They had three children together in 2003, 2006, and 2007. The parties purchased their marital home in Bondurant in 2000.

Laura is forty-seven years old. Laura had her college degree prior to the marriage and earned a master's degree in 2011. Laura was a teacher when the parties married. In 2008, Laura resigned and began running an in-home daycare business from the marital home. Laura returned to teaching in 2014, and in 2017 moved to Oskaloosa as a science teacher. She has a salary of approximately $47,000 per year.

Bryant is forty-seven years old. Bryant has a high school education. Since 2004, Bryant has worked out of the marital home as the manager of an apartment building rental business and a car rotisserie business. The parties added a shop building to the marital property for Bryant's businesses. The apartment business is discussed below in further detail. The car rotisserie business involved Bryant making and selling car rotisseries used in the restoration of old cars. The rotisserie business had been decreasing in profitability since 2009. He estimated he should earn around $25,000 per year at his rotisserie business, working approximately twenty hours per week.

The parties are joint owners of three S-corporations, each of which holds a multi-unit rental property in the Des Moines area. Two of the properties are mortgaged, with Laura's father acting as mortgagor. Bryant performs maintenance and upkeep for the properties and is the primary contact for the tenants, working approximately twenty hours per week. Each corporation has a separate checking account. Twice a year Bryant makes disbursements from the business accounts into a joint account from which Bryant pays himself. The rental properties' income was taxed half to each Bryant and Laura during the marriage, but Bryant considered the profits his. Bryant averages $36,000 to $38,000 per year in profit, though the tax exhibits show net profits over $40,000 for multiple years.

On May 12, 2016, Bryant filed a petition for dissolution of marriage. In July, the court issued an order to preserve assets. In October, the parties entered a mediated temporary joint stipulation which required Bryant pay $900 per month for child support. Between June and August of 2017, Bryant withdrew approximately $18,000 from the joint checking account subject to the preservation order. In July Laura moved to Oskaloosa, taking furniture from the marital home. A trial was held on August 8, 2017.

The court entered its decree on October 19, 2017. Laura was granted sole legal custody and physical care of the three children, with Bryant paying child support. Bryant was awarded all three S-corp. rental properties and the marital home. Both parties were found to have violated the preservation of assets order. The court ordered Bryant pay an equalization payment to Laura of $343,606.63, giving him until January 30, 2020, to refinance the marital home and business properties and make the payment.

On October 24, Bryant filed an Iowa Rule of Civil Procedure 1.904(2) motion for the court to reconsider several provisions in the decree and stay the order relating to three checking accounts. Laura also filed a rule 1.904(2) motion requesting the court accelerate the timeline of refinancing and the equalization payment, specifically regarding premarital assets. On February 5, 2018, the court denied all of Bryant's motion, and denied Laura's motion except for a personal property provision not applicable here. Bryant appeals.

## II.     Standard of Review

The standard of review for an action dissolving a marriage is de novo. *In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007). While our review is de novo, the district court is given latitude to make determinations which we will disturb only if equity has not been done. *In re Marriage of Okland*, 699 N.W.2d 260, 263 (Iowa 2005). We give weight to but are not bound by the district court's factual findings. *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). Because the district court is in a unique position to hear the evidence, we defer to the district court's determinations of credibility. *In re Marriage of Brown*, 487 N.W.2d 331, 332 (Iowa 1992).

## III.     Analysis

On appeal, Bryant requests the equalization payment he is to pay Laura be reduced by over $53,000 to a total equalization payment of $289,902.28. He calculates this change through setting aside additional premarital moneys to him and altering the valuations used by the court in its division of assets.

**A.     Inclusions.** First, Bryant identifies additional premarital assets he believes the court should have set aside from the property division. Bryant claims

proceeds from the sale of his premarital home should have been set aside and not included in the equalization-payment calculations. The other inclusion Bryant claims was erroneous was a 1968 Pontiac GTO which, even though purchased during the marriage, he claims was purchased using the proceeds from a car sale prior to the marriage whose funds had never been commingled. Bryant did not identify a specific account or asset where he kept the house proceeds separate from the marital assets.

The court expressly found in its decree "that based on the property settlement, the court will not treat premarital assets separately from the marital assets" except for specifically identified items on the distribution chart. Premarital assets for both Bryant and Laura not treated separately included proceeds from premarital homes owned by each party, the GTO, and premarital IPERS retirement accruals by Laura. The court noted both parties contributed cash from the sales of their premarital homes toward the down payment of the marital home and those funds had been commingled.

Our case law is clear that "the property included in the divisible estate includes not only property acquired during the marriage by one or both of the parties, but property owned prior to the marriage by a party." *In re Marriage of Fennelly*, 737 N.W.2d 97, 102 (Iowa 2007) (citation omitted). "The trial court may place different degrees of weight on the premarital status of property, but it may not separate the asset from the divisible estate and automatically award it to the spouse that owned the property prior to the marriage." *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006). Indeed, the court's statutory obligation is to

"divide all property, except inherited property or gifts received or expected by one party, equitably between the parties." Iowa Code § 598.21 (2016).

We find the court acted properly by including the parties' premarital property in the division of assets. The inclusions and resulting division of property are equitable under the circumstances of this case.

**B.    Valuations.** Bryant challenges the district court's valuations of various business and personal accounts, property, inventory, motor vehicles, and equipment used by the court in its property division.

"Ordinarily, a trial court's valuation will not be disturbed when it is within the range of permissible evidence." *Hansen*, 733 N.W.2d at 703. "In ascertaining the value of property, its owner is a competent witness to testify to its market value." *Id.* "Although our review is de novo, we ordinarily defer to the trial court when valuations are accompanied by supporting credibility findings or corroborating evidence." *Id.*

The district court accepted some of Bryant's valuations and some of Laura's valuations. The court looked at exhibits submitted by the parties supporting their valuations. When making its valuation determinations, the court also considered the dissipation of assets by both parties in violation of the court's order during their separation. The court further clarified its decree and valuations in the ruling on the parties' rule 1.904 motions. The court specifically noted that it was winding up a corporation between partners when one partner was receiving the businesses and the associated physical assets and trying to ensure the partner being bought out obtained her share of the profits from 2017 as well as appropriate equity for her half-ownership in the corporations.

Bryant has not established the court's valuations were outside the range of permissible evidence. We find the district court's valuations were each well within the range of permissible evidence, and we decline to disturb the court's credibility findings relating to the valuation of assets. *See In re Marriage of McDermott*, 827 N.W.2d 671, 679 (Iowa 2013).

We find the court's valuations and distribution of assets to be equitable. We affirm the district court's division of property.

**C.** **Appellate Attorney Fees.** Laura requests an award of appellate attorney fees. She has submitted an affidavit showing her attorney fees for this appeal are $5869.00. An award of appellate attorney fees is not a matter of right, but rests within the court's discretion. *Sullins*, 715 N.W.2d at 255. We consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* We determine Laura should be awarded appellate attorney fees of $3000.

**AFFIRMED.**