# IN THE SUPREME COURT OF IOWA

No. 14–0317

Filed January 29, 2016

**IN RE THE MARRIAGE OF RICHARD C. MAUER
AND CAROL K. MAUER,**

Upon the Petition of
**RICHARD C. MAUER,**

> Appellee,

And Concerning
**CAROL K. MAUER,**

> Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Black Hawk County, Jon Fister, Judge.

Both parties seek further review of the financial provisions in their dissolution decree. **DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED AS MODIFIED.**

Jacob R. Koller of Simmons Perrine Moyer Bergman, PLC, Cedar Rapids, for appellant.

Allison M. Heffern and Diane Kutzko of Shuttleworth & Ingersoll, PLC, Cedar Rapids, and Max E. Kirk of Ball, Kirk & Holm, P.C., Waterloo, for appellee.

**WIGGINS, Justice**.

Both parties seek further review of the financial provisions in their dissolution decree. Pursuant to our discretion to consider issues raised on further review, we let the court of appeals decision stand with respect to the property distribution, child support, life insurance, and appellate attorney fees. We do find, however, that the spousal support award by the district court was too low and the spousal support award as modified by the court of appeals was too high. Accordingly, we modify the spousal support award in the dissolution decree as set forth in this opinion.

## I. Prior Proceedings.

Richard Mauer filed a petition to dissolve his marriage to Carol Mauer. Following a trial, the district court weighed conflicting evidence submitted by the parties as to the value of various business assets and real property. It then distributed the Mauers' substantial assets, ordering Richard to make an equalization payment to Carol in installments and pay her half the net proceeds from the sale of three commercial lots they owned. The court ordered Richard to pay $18,000 per month in spousal support, decreasing to $10,000 per month when Carol reaches retirement age and $5000 per month when Richard reaches retirement age or actually retires, whichever occurs later.

The court also awarded joint legal custody of the Mauers' two minor children to Richard and Carol, with Carol responsible for their primary physical care. Accordingly, the court ordered Richard to pay $3624 per month in child support initially, decreasing to $2598 per month upon the high school graduation of the older minor child. In addition, the court ordered Richard to designate Carol as beneficiary on one of his existing life insurance policies until the entire equalization payment was paid.

Both parties filed posttrial motions to amend or enlarge the findings or rulings of the district court. The district court issued an order amending the decree and a stipulated nunc pro tunc order. In its order amending the decree, the court adjusted the equalization payment to $243,458 to correct errors in its original calculation. The court also concluded the spousal support award was set too high and amended the decree to order Richard to pay $9100 per month in spousal support initially, decreasing to $7000 per month when Carol reaches retirement age and $5000 per month when Richard reaches retirement age or actually retires, whichever occurs later. The court declined to order Richard to maintain life insurance to secure these support obligations.

Both parties appealed, and we transferred the case to the court of appeals. The court of appeals affirmed the property valuations and distribution in the decree, finding both to be equitable. In addition, the court affirmed the child support determination in the decree as being within the sound discretion of the district court. However, the court concluded the spousal support award by the district court was inequitable and modified the decree in this respect, ordering Richard to pay $25,000 per month in spousal support until Carol's remarriage or the death of either party. In doing so, the court found its determination to be consistent with the American Academy of Matrimonial Lawyers (AAML) guidelines. The court also affirmed the district court's refusal to require Richard to secure his spousal support obligations with life insurance.

Both parties sought further review, which we granted. In his application for further review, Richard alleges the court of appeals improperly awarded Carol lifetime spousal support in the amount of $25,000 per month. In her application for further review, Carol alleges

the district court and the court of appeals erred in failing to order Richard to secure his spousal support obligations with life insurance.

## II. Background Facts.

Richard and Carol married in July 1985. At the time of the trial, they had been married for twenty-eight years. Carol was fifty-six years old, and Richard was fifty-five years old. During the course of the marriage, the couple had four children. Two of the children were still minors upon dissolution of the marriage, including a daughter who was a senior in high school and a son who was a freshman.

Richard and Carol met in 1984. At the time, Richard was in medical school at the University of Iowa, where he had previously completed his undergraduate degree in science in 1977. Carol had recently received a master's degree in business administration from the University of Iowa, having previously graduated from Cornell College with a double major in German and biology. Upon Richard's graduation from medical school, he completed an internship in internal medicine in Des Moines. During his internship, he decided he was passionate about ophthalmology. He was accepted into a residency program in Detroit, Michigan. While awaiting the start of his residency, he worked for one year as an emergency-room doctor in Ottumwa and Des Moines. During that year, Richard and Carol were married.

While Richard was completing his three-year residency, Carol worked in computer sales. She was the primary breadwinner for the couple during that period, and Richard received only a small stipend as a resident. Richard completed his residency in 1989. That same year, Carol stopped working just before their first child was born. The couple moved to Waterloo the following month, where Richard began working as an ophthalmologist.

Once the couple arrived in Waterloo, Richard rapidly developed a successful ophthalmology practice that continued to grow over time. Over the years, he also launched numerous business endeavors, some of which were more successful than others. At the time of the trial, Richard was the sole owner of three closely held corporations: Cedar Valley Ophthalmology, P.C.; Mauer Vision Center, P.C.; and D'Vine Medical Spa, L.L.C. Cedar Valley Ophthalmology does business as Mauer Eye Center in Waterloo, Iowa, and has forty-five to fifty employees. Mauer Vision Center is located in Waverly, Iowa, and has several employees. In addition, Richard and Carol each owned an interest in Mauer Land, L.L.C., a limited liability company that owns the building housing both Mauer Eye Center and D'Vine Medical Spa. The couple also owned three commercial lots at Pinnacle Prairie in Cedar Falls and a commercial property leased by Veridian Credit Union.

Following the birth of the couple's first child, Carol devoted herself to being a mother and homemaker. Although she offered to return to work several times, Richard preferred she stay home with the children. In addition to caring for the children and the family home, Carol devoted herself to various community activities. In 2007, she became a licensed massage therapist and began practicing Reiki, massage, and shamanism at D'Vine Medical Spa. For the next several years, she worked approximately twenty-five to thirty hours per week. Unbeknownst to her, Richard paid her through contributions to a 401k retirement account. From 2009 to 2012, Carol also taught classes at a massage school, for which she was paid approximately $3000 per year. However, she has not had a regular income from employment since 1989.

Richard petitioned for divorce in August 2012 and moved out of the family home a few days later in September 2012. Carol remained in

the home with the two minor children who were still in high school. While they awaited trial, Richard continued to pay between $11,000 and $12,000 per month for the benefit of Carol and the two minor children, which was consistent with his obligations under a temporary support order.

### III. Scope of Review.

When considering an application for further review, we have discretion to review all the issues raised on appeal or in the application for further review or only a portion thereof. *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 483 (Iowa 2012). In this case, we exercise that discretion to review only the spousal support award. Thus, the court of appeals decision affirming the dissolution decree as modified will stand as the final decision of this court in all other respects.

Marriage dissolution proceedings are equitable proceedings. Iowa Code § 598.3 (2011); *Schenkelberg*, 824 N.W.2d at 483. Thus, the standard of review is de novo. *Schenkelberg*, 824 N.W.2d at 483; *see* Iowa R. App. P. 6.907. Although we give weight to the factual findings of the district court, we are not bound by them. *Schenkelberg*, 824 N.W.2d at 483; *see* Iowa R. App. P. 6.14(6)(*g*). But we will disturb a district court determination only when there has been a failure to do equity. *In re Marriage of Anliker*, 694 N.W.2d 535, 540 (Iowa 2005).

### IV. Spousal Support.

Before we begin our analysis concerning the spousal support award in this case, we think it is important to discuss the general principles governing such awards.

**A. General Principles.** We considered the subject of spousal support in *In re Marriage of Gust*, 858 N.W.2d 402, 407–14 (Iowa 2015). Although we acknowledged a few states determine spousal support

awards by employing alternative approaches that rely on arithmetic formulas, we cautioned Iowa courts "are compelled to follow the traditional multifactor statutory framework" set forth in Iowa Code section 598.21A. *Id.* at 407–10. Under the statutorily mandated approach, a court may grant spousal support

> for a limited or indefinite length of time after considering all of the following:
>
> *a.* The length of the marriage.
>
> *b.* The age and physical and emotional health of the parties.
>
> *c.* The distribution of property made pursuant to section 598.21.
>
> *d.* The educational level of each party at the time of marriage and at the time the action is commenced.
>
> *e.* The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.
>
> *f.* The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.
>
> *g.* The tax consequences to each party.
>
> *h.* Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.
>
> *i.* The provisions of an antenuptial agreement.
>
> *j.* Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21A(1). The legislature has not authorized Iowa courts to employ any fixed or mathematical formula in applying spousal support. *Gust*, 858 N.W.2d at 410–12. Rather, it has instructed courts to equitably award spousal support by considering each of the above criteria. Iowa Code § 598.21A(1); *see id.* § 598.3.

Our recognition in *Gust* that, over time, our cases have established general principles governing spousal support awards in no way diminishes the statutory mandate to consider each criterion set forth in section 598.21A(1). *See* 858 N.W.2d at 410. On the contrary, we merely observed our cases establish the comparative weight or importance of certain statutory criteria relative to others. *Id.* at 410. Thus, we recognized fair and equitable consideration of the section 598.21A(1) criteria ordinarily places some degree of emphasis on the duration of the marriage and the earning capacities of the spouses as demonstrated by the historical record. *Id.* at 410–12.

In attempting to assist courts applying the spousal support analysis required by section 598.21A(1), we responded in part to advocates for reform who criticized the traditional approach to spousal support embraced by our legislature as lacking predictability and consistency. *See id.* at 408–09. However, we recognize some degree of inconsistency is inevitable in this context, because the financial decisions spouses make are highly personal and responsive to idiosyncratic facts and circumstances.

Although some advocates for reform have argued that using guidelines to determine spousal support might alleviate predictability and consistency concerns, agreement is lacking as to what appropriate guidelines might look like. *See id.* The American Law Institute (ALI) and the AAML have each suggested substantively different guidelines-based approaches to spousal support determination. *Compare* Principles of the Law of Family Dissolution: Analysis and Recommendations ch. 5, at 874–1009 (Am. Law Inst. 2002), *with* Mary Kay Kisthardt, *Re-thinking Alimony: The AAML's Considerations for Calculating Alimony, Spousal Support or Maintenance*, 21 J. Am. Acad. Matrim. Lawy. 61, 78–81

(2008). *See also Gust*, 858 N.W.2d at 408–10. In addition, numerous commentators have offered their own suggestions for reform, some of which begin with consideration of the ALI or AAML guidelines. *See, e.g.*, Cynthia Lee Starnes, *The Marriage Buyout: The Troubled Trajectory of U.S. Alimony Law* 161–68 (2014); Jill C. Engle, *Promoting the General Welfare: Legal Reform to Lift Women and Children in the United States Out of Poverty*, 16 J. Gender Race & Just. 1, 39–43 (2013); Lara Lenzotti Kapalla, *Some Assembly Required: Why States Should Not Adopt the ALI's System of Presumptive Alimony Awards in Its Current Form*, 2004 Mich. St. L. Rev. 207, 232–36 (2004); Alicia B. Kelly, *Sharing Inequality*, 2013 Mich. St. L. Rev. 967, 973 (2013). Furthermore, a few state and local jurisdictions have adopted their own guidelines-based approaches to spousal support determinations. *See Gust*, 858 N.W.2d at 408–09; Kisthardt, 21 J. Am. Acad. Matrim. Law. at 73–77.

In *Gust*, we noted our resolution on the spousal support issue was consistent with the presumptive spousal support award that would have resulted from application of the AAML guidelines to the facts before us. *Gust*, 858 N.W.2d at 416 n.2. However, we clearly acknowledged the AAML guidelines are not Iowa law and therefore clearly are not binding on Iowa courts. *Id.* Nonetheless, we suggested the AAML guidelines might "provide a useful reality check with respect to an award of traditional spousal support." *Id.*

However, even if spousal support guidelines may provide a useful reality check in some cases, because they are not Iowa law, they can serve neither as the starting point for a trial court nor as the decisive factor for a reviewing court on appeal. *See id.* When application of the factors contained in section 598.21A(1) results in a spousal support calculation that is inconsistent with a spousal support calculation under

any guidelines-based approach, the court's application of the statutory factors must prevail over the guidelines-based determination.

**B. Application of Iowa Code Section 598.21A(1).** In reviewing the spousal support determination by the district court, the court of appeals noted this case involves traditional spousal support. The court of appeals agreed with the district court that the monthly budget of approximately $23,000 Carol submitted at trial was excessive and she could eventually downsize her home without decreasing her quality of life. However, the court of appeals disagreed with the district court's finding that Carol's healing arts practice was unlikely to amount to anything more than a hobby, concluding Carol could be expected to earn $25,000 per year working part-time as a massage therapist. Despite its conclusion that Carol would bring in more income than the district court accounted for, the court of appeals concluded the district court's spousal support award was inequitable because Carol was accustomed to a standard of living well beyond the standard of living she could afford with $9100 per month in spousal support.

Based on the evidence Richard provided of his annual income over the past several years, the court of appeals concluded his expected income was at least $1,000,000 per year. The court of appeals then determined the $25,000 in monthly spousal support Carol requested would achieve equity between the parties. The entire analysis applying the section 598.21A(1) factors was contained in two sentences:

> Upon our de novo review, we believe the district court's award of $9100 per month fails to do equity in this case. We conclude that awarding Carol her request for $25,000 per month in spousal support would achieve equity between the parties.

In a footnote citing *Gust*, the court of appeals acknowledged it consulted the AAML guidelines in reaching this conclusion:

> We observe our resolution on this issue is consistent with the recommendation of the American Academy of Matrimonial Lawyers (AAML). In this case, application of the AAML guideline formula would produce a presumptive unlimited support payment of $295,000 per year.

(Citations omitted.)

We disagree with the court of appeals' analysis for a number of reasons. First and foremost, any court, including our appellate courts, must apply the section 598.21A(1) factors in making spousal support determinations. As seen later in our analysis, the spousal support awarded by the court of appeals is inconsistent with this requirement.

In *Gust*, we indicated in a footnote after applying the 598.21A(1) factors that our resolution of a spousal support issue was consistent with the presumptive result under the AAML guidelines. *See Gust*, 858 N.W.2d at 416 n.2. However, we did not use the AAML guidelines to determine whether the spousal support awarded was equitable—we used the section 598.21A(1) factors and principles suggesting the comparative weight of those factors derived from our relevant caselaw. *Id.* at 410–12, 414–16.

We also find the court of appeals was incorrect to conclude awarding Carol $25,000 per month was consistent with the AAML guidelines. First, as previously noted, the court of appeals expressly found Richard's gross income exceeds $1,000,000 per year. The AAML formula for determining presumptive spousal support "does not apply to cases in which the combined gross income of the parties exceeds $1,000,000 a year." Kisthardt, 21 J. Am. Acad. Matrim. Law. at 80–81. Second, the guidelines name several circumstances that may justify an

adjustment to the presumptive amount or duration of spousal support, and some of those circumstances were present in this case. Namely, Carol was the primary caretaker of the dependent minors and gave up her career or otherwise supported Richard's career. *See id.* In addition, the age and health of the parties and other circumstances may make application of the presumptive formulas inequitable in this case. *See id.* Carol was less than ten years from full retirement age, suffered from recurrent shoulder pain that prevents her from working full-time, and received a substantial property distribution in the decree. The court of appeals concluded "application of the AAML guideline formula would produce a presumptive unlimited support payment of $295,000 per year" without addressing whether any of these circumstances called for adjusting that presumptive determination. Even if this case had been considered in a jurisdiction in which the AAML guidelines were binding,[1] reliance on the presumptive determination in setting the amount or duration of spousal support without addressing whether the above circumstances called for departure would have been erroneous. *See id.*

More fundamentally, as previously noted, when application of the factors contained in section 598.21A(1) results in a spousal support calculation inconsistent with a calculation under any guidelines-based approach, the calculation determined by application of the statutory factors must prevail because the guidelines have not been adopted or sanctioned by our legislature.

Upon its de novo review, the court of appeals determined a spousal support award exceeding the amount accounted for in Carol's excessive budget was necessary to achieve equity between the parties even though

---

[1]Our research indicates no state legislature has enacted the AAML guidelines.

it acknowledged a lesser amount would allow her to maintain the standard of living she enjoyed during the marriage. We find this determination was incompatible with the requirements of section 598.21A(1).

We begin our de novo review of the spousal support award by reviewing the district court determinations in this case. Following its initial award of spousal support, the district court reviewed its decision after both parties filed motions to amend or enlarge findings of fact or conclusions of law. In the final decree, the court reduced the spousal support awarded in the original decree. In doing so, the court noted the temporary support Carol had been receiving for more than a year had satisfied her needs and the minor children's needs well enough that she made no complaint during trial that she or the children were suffering any economic deprivation.

At the time of the trial, the parties had been married for twenty-eight years. Both were in their fifties, and both were in relatively good health. At the time of the marriage, both Richard and Carol had completed advanced degrees, and he was completing his residency while she provided primary support for the couple. After their first child was born, they jointly decided Carol should give up her employment and dedicate herself to raising their children. This decision allowed Richard to build his ophthalmology practice knowing his children were being cared for. Later in the marriage, Carol became a massage therapist. Although Carol did not knowingly practice massage therapy for traditional monetary compensation during the course of the marriage, we agree with the court of appeals that her earning capacity at the time of the trial was approximately $25,000 per year. Without spousal support,

she will be unable to maintain the lifestyle she enjoyed prior to the dissolution of the marriage.

The district court awarded Carol a property settlement valued at $1,762,118. This property settlement included approximately $693,000 in liquid assets she could rely upon to generate pre-retirement income.[2] Carol was also to receive half the proceeds from the sale of the commercial lots in Pinnicle Park, which have a net value of approximately $244,000. After paying commission and closing costs following the sale of these lots, Carol should net at least an additional $107,000. Thus, the district court awarded Carol investable preretirement assets totaling approximately $800,000. Assuming a four percent return, which is the rate of return her own expert conceded she could realize, Carol is capable of generating approximately $32,000 in annual investment income from these assets. We therefore conclude Carol is capable of earning $57,000 per year in employment and investment income.

To determine how much income Carol would require to support herself at a standard of living reasonably comparable to that she enjoyed during the marriage, we begin with the budget Carol provided to the district court. Carol acknowledged the budget was essentially an estimate of historical expenditures for the entire family before the dissolution. Because it included past expenditures Carol was no longer obligated to pay at the time of the trial, the budget was an inaccurate basis for projecting her post-dissolution support needs. After adjusting

[2]Following the dissolution of her marriage to Richard, Carol retained retirement assets valued at $854,856, including $831,662 in 401k accounts she was awarded in the property distribution and $23,194 in a rollover IRA account she inherited. We do not consider these assets in determining Carol's pre-retirement earning capacity.

the budget to eliminate every inaccuracy pointed out by the district court, to remove child-specific items that could be paid for using child support, and appropriately to reduce the cost of food, clothing, travel, and household supplies, we find Carol requires approximately $13,000 per month, or approximately $156,000 per year, to enjoy a standard of living approaching that she enjoyed during her marriage to Richard.

In determining how much spousal support Carol requires to support herself at that standard of living, we must also consider the tax consequences. Like employment income and investment income, spousal support is taxable. Assuming an effective tax rate of twenty-five percent, Carol requires approximately $208,000 in pretax income from her employment, her investments, and spousal support. Thus, because we find Carol can generate approximately $57,000 in pretax income per year through her employment and her investments, we conclude she requires approximately $151,000 in spousal support annually to maintain a standard of living reasonably comparable to that she enjoyed during the marriage. This equates to $12,583.33 per month. Richard's substantial income from his ophthalmology practice is more than adequate to support this award. *Schenkelberg*, 824 N.W.2d at 485–87. Accordingly, we determine $12,600 per month constitutes an equitable spousal support award in this case.

Termination of spousal support may be appropriate when "the record shows that a payee spouse has or will at some point reach a position where self-support at a standard of living comparable to that enjoyed in the marriage is attainable." *Gust*, 858 N.W.2d at 412. But based upon her age, educational background, training, employment skills, work experience, and the length of her absence from the job market, there is no reason to believe Carol's earnings will ever increase

such that she will become capable of earning enough to maintain a comparable standard of living to that she enjoyed during her marriage to Richard. *See Schenkelberg*, 824 N.W.2d at 484–87. Consequently, we find Carol is entitled to lifetime spousal support. *See id.* at 487. Nonetheless, for the following reasons, we agree with the district court that equity requires the spousal support award to decrease when Carol reaches retirement age and when Richard reaches retirement age.[3]

When Carol reaches retirement age, in addition to drawing income from the liquid assets she was awarded in the property distribution, she can also draw income from the retirement assets we did not consider in setting her preretirement spousal support. At the time of the dissolution, the retirement and IRA accounts Carol was awarded in the property distribution were valued at $854,856. Because these accounts will continue to grow tax-free until Carol begins to draw upon them, by the time Carol reaches retirement age, their value will have significantly increased. Moreover, upon reaching retirement age, Carol will be eligible to draw social security benefits based on her own prior employment.

In contrast, when Richard retires from his ophthalmology practice, his income will decrease dramatically. In addition, once he begins drawing his social security benefits, Carol will qualify to receive increased social security benefits based on his prior employment.

Based on these facts and circumstances, we conclude section 598.21A(1) requires us to account for the retirement of both parties in setting spousal support. When Carol reaches the age of sixty-six years and six months, Richard shall pay spousal support in the amount of

---

[3]Neither party disputes that the question of whether or how the parties' prospective retirements should impact the spousal support award was ripe. *See Gust*, 858 N.W.2d at 416–18.

$6500 per month. When Richard reaches the age of sixty-six years and six months or actually retires as a practicing ophthalmologist, he shall pay spousal support in the amount of $5000 per month. If Richard retires as a practicing ophthalmologist before Carol reaches the age of sixty-six years and six months, Richard shall pay $5000 per month in spousal support upon his retirement. Spousal support shall cease upon any one of the following contingencies: Carol's remarriage, Carol's death, or Richard's death.

**V. Disposition.**

We affirm the court of appeals decision affirming the district court with respect to the property distribution, child support, life insurance, and appellate attorney fees. We vacate the decision of the court of appeals as to the spousal support award and modify the judgment of the district court with respect to spousal support as follows. Richard shall pay Carol $12,600 per month in spousal support until Carol reaches the age of sixty-six years and six months. At that time, Richard shall pay spousal support in the amount of $6500 per month. When Richard reaches the age of sixty-six years and six months or actually retires as a practicing ophthalmologist, he shall pay spousal support in the amount of $5000 per month. If Richard retires as a practicing ophthalmologist before Carol reaches the age of sixty-six years and six months, Richard shall pay $5000 per month in spousal support upon his retirement. Spousal support shall cease upon Carol's remarriage, the death of Carol, or Richard's death.

We assess half the costs on appeal to each party.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED AS MODIFIED.**