**IN THE COURT OF APPEALS OF IOWA**

No. 17-0803
Filed October 10, 2018


**IN RE THE MARRIAGE OF JACKIE LEA SPITZMILLER
AND SCOTT LOUIS SPITZMILLER**

**Upon the Petition of
JACKIE LEA SPITZMILLER,**
        Petitioner-Appellant/Cross-Appellee,

**And Concerning
SCOTT LOUIS SPITZMILLER,**
        Respondent-Appellee/Cross-Appellant.
_____


        Appeal from the Iowa District Court for Scott County, Paul L. Macek, Judge.


        Jackie Spitzmiller appeals the spousal support provision of the decree dissolving her marriage to Scott Spitzmiller; Scott cross-appeals the property equalization payment. **AFFIRMED AS MODIFIED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**


        Michael J. McCarthy of McCarthy, Lammers & Hines, LLP, Davenport, for appellant.

        Jennie L. Clausen and Ryan M. Beckenbaugh of H.J. Dane Law Office, Davenport, for appellee.


        Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**VAITHESWARAN, Presiding Judge.**

This appeal and cross-appeal raise challenges to the spousal support and property distribution provisions of a dissolution decree.

## I. Background Facts and Proceedings

Jackie and Scott Spitzmiller married in 2000 and divorced in 2017. The couple has one adult child. Jackie was fifty-two years old at the time of trial, and Scott was forty-seven.

Scott worked as a cement mason foreman, a job that took a toll on his back and knees. He earned between $60,000 and $68,000 in the four years preceding trial and had an employment-based pension plan that would afford him retirement income at the age of fifty-eight.

Jackie was a high-school graduate. She went to cosmetology school as well as community college for highway construction, and took "some technical engineering, mechanical drafting in the state of Colorado." She had employment experience as a forklift driver but most recently cleaned houses part-time.

Jackie was an admitted alcoholic. She had a criminal record grounded in her alcoholism, which reduced her prospects for full-time employment.

The couple purchased a home in 2013 for $72,500. The home was saddled with a thirty-year mortgage and little equity. The couple owned several vehicles in addition to personal property.

The district court found Scott's annual earning capacity at the time of trial was $60,000 and Jackie's earning capacity was $18,000. The court originally ordered Scott to pay Jackie $700 per month in traditional alimony until Jackie married, Scott drew pension benefits, or either party died, whichever occurred first.

On Scott's motion for enlarged findings and conclusions, the court reduced the award to $450 per month. The court ordered Scott's pension divided pursuant to a qualified domestic relations order, valued the home at $72,000 and awarded it to Scott together with the mortgage, distributed the vehicles and personal property, allocated student loan and medical debt to Jackie, and ordered Scott to make an equalizing payment of $9595 to Jackie. This appeal and cross-appeal followed.

## II.     *Spousal Support*

A court may grant spousal support for a limited or indefinite period of time after considering the statutory factors set forth in section 598.21A(1) (2017). *In re Marriage of Mauer*, 874 N.W.2d 103, 107 (Iowa 2016). Our review of the district court's award is de novo. *Id.* at 106.

Jackie argues the district court should not have reduced her spousal support award to $450 per month. She points to Scott's average annual income in the four years preceding trial, his net disposable income, and the disparity in the couple's annual earnings. Scott counters that "Jackie is fully capable of supporting herself" and has dissipated income by virtue of her alcoholism.

We are unpersuaded by Scott's arguments. Although Jackie earned wages during the marriage, Scott's earnings far outstripped hers. This factor together with the length of the marriage justify the court's award of spousal support.

We turn to the amount of support. In initially awarding Jackie $700 per month, the district court stated:

> The petitioner is presently not self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage. There was a paucity of evidence in respect to the parties' standard of living, but the parties were able to purchase a house, several automobiles, a motorcycle as an indulgence, and participate in

collecting motorcycle related items, as well as raise a child to adulthood. During the marriage, the petitioner was primarily supported financially by the respondent's earnings. At times she contributed financially to the household, but, primarily, the responsibility for financially providing for the family fell to the respondent. Presently, the petitioner is living with her parents and her adult child in her parent's house. The petitioner will require some financial assistance from the respondent in order to even approach the marital standard of living. The respondent recently had an offer of employment with a Fortune 500 company that would have allowed her to earn over $40,000 per year. Regrettably, the offer was withdrawn due to her criminal history. The respondent's criminal history will be an impediment to finding employment that pays much more than $9 per hour.

After noting that Scott had a pension, the court stated:

On her part, the petitioner has no pension benefits or future interests. She will not be able to draw on Social Security in her own name without working additional quarters. She will only be able to draw on Social Security based upon the respondent's employment.

The court proceeded to apply the statutory spousal support factors as follows:

In this case the parties were married a few days short of 17 years. The petitioner is five years older than the respondent and, if she remains unmarried, will be able to draw on the respondent's social security sooner than the respondent. The respondent's physical health will probably require him to begin drawing on his pension sooner than being eligible to draw on his social security. He is in better health than the petitioner. The petitioner's alcohol abuse syndrome has a very negative affect on her earning capacity. This is evidenced by the fact that she lost a very valuable employment opportunity. This court can certainly understand any frustration the respondent might feel as a result of being ordered to pay alimony based in part on what might appear to be an avoidable malady, i.e. just don't pick up that beer or drink . . . just leave it on the table. The fact is that alcohol abuse is a recognized infirmity. It is akin to any other illness that might reduce a person's earning capacity. As with diseases like cancer, it does re-occur. The respondent's earning capacity is more than three times that of the petitioner. He will be able to deduct from his taxes the amount that he pays in alimony. This will lessen the burden on him. This sum of alimony will not put the petitioner in a financial situation that allows her to live expansively. Instead, she will still have a much reduced lifestyle.

> The respondent argues that he should not have to pay both alimony and an equalization payment. One of the reasons he has to pay the equalization payment is that he very much wants to keep the motorcycle. This decree allows for that, but if for some reason he is unable to make the equalization payment in a reasonable time, then he will be required to sell the motorcycle.

Later, the court back-tracked from this well-reasoned decision based on Scott's assertion that the court failed to account for his payment of $100 in weekly union dues.

We are not persuaded the dues payments warranted a $250 per month reduction in the spousal support payments. The length of the marriage and disparate earnings, together with Jackie's age, infirmity, and lack of retirement income on her own account, justified the original spousal support award. As Jackie points out, Scott's disposable income more than sufficed to cover a larger amount of spousal support as well as Scott's union dues.

We modify the dissolution decree to incorporate the original spousal support provision of $700 per month for the duration specified in the decree.

## III.     *Property Equalization Payment*

Scott contends the district court improperly considered Jackie's premarital student-loan debt in calculating the equalization payment. In his view, the court should have set aside the debt to Jackie before calculating the equalization payment. On our de novo review, we disagree.

Iowa Code section 598.21 requires the court to divide "all property, except inherited property or gifts received or expected by one party, equitably between the parties." One of the factors for consideration is "property brought into the marriage by each party. Iowa Code § 598.21(5). "Importantly, the property

included in the divisible estate includes not only property acquired during the marriage by one or both of the parties, but property owned prior to the marriage by a party." *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006). Setting aside of assets "is contrary to our distribution scheme." *Id.* It follows that the setting aside of premarital debts also would be contrary to our distribution scheme.

Jackie brought $8000 of student-loan debt into the marriage. She agreed that repayment of the debt was her obligation. The district court did not set aside the debt to her before calculating the equalization payment but included it in the divisible estate and required Jackie to pay the debt. The court reasoned, "The length of this marriage, the age of the parties, and the disparity in the parties' earning capacity requires the court to treat this as marital debt." The court's treatment of the debt was equitable.

## IV.  *Disposition*

We modify the spousal support provision to increase the amount of spousal support to $700 per month. We affirm the property division provision in the dissolution decree.

**AFFIRMED AS MODIFIED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**