# IN THE COURT OF APPEALS OF IOWA

No. 19-1666
Filed March 17, 2021

IN RE THE MARRIAGE OF SUSAN FLANAGAN HOUSER AND THOMAS J. HOUSER

Upon the Petition of
SUSAN FLANAGAN HOUSER,
      Petitioner-Appellee/Cross-Appellant,

And Concerning
THOMAS J. HOUSER,
      Respondent-Appellant/Cross-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Robert B. Hanson, Judge.

Thomas J. Houser appeals and Susan Flanagan Houser cross-appeals the economic provisions of the decree dissolving their marriage. **AFFIRMED AS MODIFIED.**

Becky S. Knutson of Davis Brown Koehn Shors & Roberts, P.C., Des Moines, for appellant/cross-appellee.

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellee/cross-appellant.

Considered by Doyle, P.J., and Tabor and Ahlers, JJ.

**DOYLE, Presiding Judge.**

Thomas J. Houser (Tom) appeals and Susan Flanagan Houser cross-appeals the economic provisions of the decree dissolving their thirty-one-year marriage. The main issue at trial was Susan's request for spousal support. The court ordered Tom to pay Susan $5500 per month for twenty-four months, then $3000 per month for the next 132 months. The court also ordered Tom to pay Susan $35,000 for attorney fees.

Both parties contest the spousal-support award. Tom contends Susan is not entitled to any form of spousal support, arguing that she can support herself. Susan asks us to affirm the spousal support ordered by the district court. In the alternative, she contends that any modification should increase the amount of spousal support to $6500 per month for twenty-four months, followed by $4000 per month until Susan reaches the age of sixty-seven, and $2000 per month thereafter until either party dies or Susan remarries.

We review dissolution of marriage cases de novo. *See* Iowa R. App. P. 6.907; *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). We give weight to the district court's fact findings even though they are not binding. *See* Iowa R. App. P. 6.904(3)(g); *Mauer*, 874 N.W.2d at 106. We will disturb the district court's findings only if they fail to do equity. *See Mauer*, 874 N.W.2d at 106. Because we base our decision on the unique facts of each case, precedent is of little value. *See In re Marriage of Brown*, 776 N.W.2d 644, 647 (Iowa 2009).

Spousal support is not a matter of right. *See In re Marriage of Mann*, 943 N.W.2d 15, 20 (Iowa 2020). Rather, the district court has "considerable latitude" in deciding whether to award spousal support. *See id.* (citation omitted). In making

its determination, the court must consider the facts of the case before it and the list of factors outlined by our legislature. *See id.* Those factors include the length of the marriage, each party's age and health, the distribution of property, the parties' education, the earning capacity of the party seeking maintenance, and the feasibility of that party becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage. Iowa Code § 598.21A(1) (2018).

Tom and Susan were married for thirty-one years, and both were fifty-four years old at the time of dissolution. For most of the marriage, they each worked full-time jobs and with similar earnings. Tom is an attorney and shareholder in a law firm. Susan has education and experience in the field of public relations, and she worked at Principal Financial Group for most of her career until her position was terminated in 2015.

The biggest difference between the parties is their health. Since 2013, Susan had been beset by an undiagnosed health issue. Just after her employment at Principal Financial Group ended, Susan was hospitalized for the second time in six months. It was then that Susan learned she had Addison's disease, a condition that will require her to take medication for the rest of her life. Susan testified that after three years of treatment, she was "at a new normal" and "stable for the most part" but "did not feel the way [she] did prior to having symptoms."

A main point of contention at trial was Susan's earning capacity. Susan testified that she is no longer able to work as she once did because emotional or physical stress causes symptoms like "brain fog," anxiety, fatigue, and headaches. Since 2016, Susan has done some freelance work for which she was paid $75 to $200 per hour, working ten to forty hours per week for brief periods. The parties'

expert witnesses believe that Susan can work but disagreed as to how much she could earn; Susan's expert ventured that she could earn between $56,700 and $70,900 per year, and Tom's expert determined that Susan could earn between $140,000 and $200,000 per year or more.

The district court described its award of $5500 per month in spousal support for twenty-four months, followed by $3000 per month for 132 months, as "a combination of rehabilitative and limited traditional" spousal support. The court awarded a greater amount for a two-year period to "bridge the time period until [Susan] is earning income." The court also determined that it is "unrealistic" to expect Susan to earn substantially more than $117,000 per year, the average of the figures provided by each party's expert witness.

The evidence supports a finding that Susan can earn $117,000 per year, an amount within the range provided by the parties' experts. Although it may have been possible at one point for Susan to earn as much or more doing freelance work than she did at Principal Financial Group, the record provides little support for imputing those earnings to Susan now. As the district court found, "it is simply unrealistic to expect a 54-year-old woman who has been unemployed since 2015 and who has had significant health problems to return to the workforce in the same capacity and at the same compensation level without skipping a beat."

But we agree with Tom that the spousal support award is excessive. In January 2019, Susan estimated her monthly living expenses to be $5127. She expected that her expenses would increase to $6767.72 per month after the divorce and to $7329.25 after she bought a house. Tom contests the $7329.25 figure, but even accepting it, the amount of spousal support awarded would greatly

exceed Susan's needs when added to her imputed earnings. Plus, a recent change to the federal tax law eliminated a deduction for spousal support payments, making "the economic impact of alimony on the paying spouse is greater today than it has been in the past." *Mann*, 943 N.W.2d at 21. Considering both Susan's economic need and the tax consequences of the award, we modify the decree to award Susan $2500 per month in spousal support for a period of 156 months (from the date of the decree) and terminating on Susan's remarriage or either party's death.[1]

Tom challenges the district court's award of $35,000 to Susan for attorney fees. "We review this award for an abuse of discretion." *See In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). The trial court may award the prevailing party in a dissolution action attorney fees in an amount it considers reasonable. *See In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994). In determining

---

[1] An appellate court decision on direct appeal which decreases periodic spousal support payments relates back to the date of the original decree. *In re Marriage of Wegner*, 461 N.W.2d 351, 353 (Iowa Ct. App. 1990); *see also In re Marriage of Woolf*, 01-0878, 2002 WL 31525435, at *4 (Iowa Ct. App. Nov. 15, 2002). In view of the parties' arguments on appeal, the parties could have anticipated the possibility that this court might reduce the spousal support award, but neither party addressed how any resulting overage in support payments should be dealt with. Our supreme court believes it is "within the power of an appellate court in such situations to provide for a reduction in the amount of future payments over a period of time required to exhaust any overplus resulting from the decision on appeal." *Thomas v. Minner*, 340 N.W.2d 285, 287 (Iowa 1983). Presumably, Tom has been making periodic spousal support payments to Susan under the decree since its entry, but we do not know that since the information is not a part of the record on appeal, nor is any information about the parties' current financial situation. So we decline to tackle the task of deciding how Tom is to be reimbursed for any overpayment in spousal support payments, if any, he has paid to Susan. To avoid the costs of further district court litigation and another appeal, the parties are encouraged to reach an agreement for a method allowing Tom to recoup his overpayment of spousal support.

an award of attorney fees, the court must consider what is fair and reasonable based on the respective abilities of the parties to pay. *See id.*

In deciding to award Susan a sum for her attorney fees, the district court observed that Susan "incurred significant attorneys' fees, expert fees, and litigation costs and in amounts significantly greater than Tom." On that basis, the court determined that "it is reasonable and equitable for Tom to assist Susan" in paying those fees and costs. We find no abuse of discretion.

Finally, both parties ask us to award them appellate attorney fees. An award of appellate attorney fees is discretionary, not a matter of right. *Sullins*, 715 N.W.2d at 255. We consider the requesting party's need, the other party's ability to pay, and the relative merits of the appeal. *See id.* After considering all applicable factors and circumstances, we decline to award either party appellate attorney fees.

**AFFIRMED AS MODIFIED.**