# IN THE COURT OF APPEALS OF IOWA

No. 22-1510
Filed March 29, 2023

IN RE THE MARRIAGE OF MELISSA LEA NYSTROM
AND DAVID PETER NYSTROM

Upon the Petition of
MELISSA LEA NYSTROM,
        Petitioner-Appellee,

And Concerning
DAVID PETER NYSTROM,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Carroll County, Adria Kester, Judge.


        David Nystrom appeals the spousal-support provisions of the decree

dissolving his marriage to Melissa Nystrom.  **AFFIRMED.**


        Bryan D. Swain of Salvo, Deren, Schenck, Gross, Swain & Argotsinger,

P.C., Harlan, for appellant.

        Vicki R. Copeland of Copeland Law Firm, P.L.L.C., Jefferson, for appellee.


        Considered by Vaitheswaran, P.J., and Greer and Chicchelly, JJ.

**CHICCHELLY, Judge.**

David Nystrom appeals the spousal-support provisions of the decree dissolving his marriage to Melissa Nystrom. David challenges the award of $5000 per month of spousal support to Melissa. Melissa asks for an award of her appellate attorney fees. Finding the spousal-support award is equitable, we affirm but decline to award Melissa appellate attorney fees.

### I. Background Facts and Proceedings.

David and Melissa were married for over twenty years. When they married, Melissa had just earned a degree in elementary and middle school education and David was attending medical school. At the beginning of the marriage, Melissa taught fifth grade to support David while he completed his medical training. When David finished and took a job with a hospital, he and Melissa agreed that she would stop working outside the home to raise their children. Melissa did not work for wages again until 2017, when she took a part-time position at their church.

Melissa petitioned to dissolve the marriage in August 2021. Because the parties agreed to joint physical care of their three children, the trial focused on child support, spousal support, and the property division. The district court entered a decree in July 2022 that awarded property with a net value of $896,682 to David and $277,939 to Melissa.[1] To balance the equities, the court ordered David to pay Melissa an equalization payment of $309,372. The court also ordered David to pay a hybrid of traditional and rehabilitative/reimbursement spousal support to Melissa: "Traditional alimony in the amount of $5000 per month is ordered and

---

[1] The values are rounded to the nearest dollar.

shall terminate upon the remarriage or death of either party. However, the first seven years of alimony shall be reimbursement/rehabilitative alimony and shall terminate only on the death of either party." Finally, the court ordered David to pay $5000 of Melissa's attorney fees.

## II. Scope and Standard of Review.

David challenges the spousal-support provisions of the decree, arguing the award is excessive. We review dissolution proceedings de novo. *See In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). We give weight to the district court's fact findings although they are not binding. *See id.* The district court has "considerable latitude" in fashioning or denying an award of spousal support based on the particular facts of each case. *In re Marriage of Mann*, 943 N.W.2d 15, 20 (Iowa 2020) (citation omitted). Because "the trial court [i]s in the best position to balance the parties' needs, . . . we should intervene on appeal only where there is a failure to do equity." *In re Marriage of Gust*, 858 N.W.2d 402, 416 (Iowa 2015).

## III. Spousal Support.

Iowa Code section 598.21A(1) (2021) lists the relevant factors the court must consider in determining whether to award spousal support. *See Mann*, 943 N.W.2d at 20. They include the length of the marriage, the parties' age and health, the property distribution, the earning capacity of the party seeking maintenance, and that party's ability to become self-supporting at a standard of living comparable to that enjoyed during the marriage. *See* Iowa Code § 598.21A(1).

The parties agree that Melissa's income is $45,721, but they disagree about David's income. At the time of dissolution, David worked for the Veteran's

Administration. In 2022, his base salary was $220,469. David also receives $2144 in land conservation payments annually. Combining these amounts, David's child support guidelines worksheet lists his gross annual income as $222,613.

Melissa's child support guidelines worksheet lists David's gross annual income as $304,288.[2] She notes that in 2021, David received a base salary of $205,048 with a $13,000 bonus. On that basis, she included an anticipated bonus of $15,000 to her calculation. Melissa also included $67,000 in income from extra emergency-room shifts. David began working those shifts as an independent contractor in 2009, earning between $130 and $200 per hour. He reported gross receipts of $90,094 in 2019 and $73,527 in 2020. In 2021, David reported gross receipts of $47,382 for these shifts, but he stopped accepting them when Melissa filed for divorce in August 2021.

The district court found Melissa's income calculations were "the most credible evidence in these circumstances." David argues that the court erred in accepting Melissa's calculations because they include the extra shifts he no longer accepts. Melissa does not deny that David stopped accepting the work but claims it is a voluntary reduction in income. There is evidence to support both arguments. On one hand, David testified that he and Melissa planned that he would reduce the amount he worked as he got older and their debts were extinguished. On the other, Melissa notes that David continued to accept extra shifts after paying off his medical school debt in 2018, only stopping when she filed for divorce in 2021. Because the trial court had a greater ability to assess the evidence and credibility

---

[2] In her brief, Melissa states that David's gross income is $304,613 but was listed as $304,288 in the child support guidelines worksheet because of an error.

of the witnesses, we defer to its finding that Melissa's calculation best represents David's income. *See Neimann v. Butterfield*, 551 N.W.2d 652, 654 (Iowa Ct. App. 1996) (stating that we accord deference to the trial court's superior ability to assess credibility because it observes demeanor and appearance firsthand).

David argues that even if we accept the trial court's findings on income, the amount of the spousal support award is excessive. He cites several appellate cases in which the court awarded smaller amounts of spousal support or ordered that it be paid for a limited duration. But other precedent "may be of little value in deciding each case" because the decision to award spousal support depends on the particular facts of the case before us. *Gust*, 858 N.W.2d at 408. We thus turn to the facts to determine whether the spousal support is equitable.

The factors set out in section 598.21A(1) support the award of spousal support. The parties were married for more than twenty years. *See* Iowa Code § 598.21A(1)(a) (listing the length of the marriage as a factor in awarding spousal support). David was only one year into his medical studies when he and Melissa married. Melissa's degree, which she earned before the marriage, allowed her to support David while he finished medical school. *See id.* § 598.21A(1)(d) (including "[t]he educational level of each party at the time of marriage and at the time the action is commenced" as a factor to consider in awarding spousal support). Both worked for a wage while David completed his medical residency before they jointly decided Melissa would stay at home to raise their three children. That decision removed Melissa from the workforce for a decade, impacting her earning capacity. *See id.* § 598.21A(1)(e) (stating the court must consider "[t]he earning capacity of the party seeking maintenance, including . . . length of absence from the job

market"). Although Melissa began working outside the home part-time in 2017, she had not worked in the teaching profession for almost fifteen years when she filed for divorce in August 2021. That month, she began working as a teacher's assistant, earning $12.85 per hour for thirty-five hours of work each week. One year later, Melissa secured a teaching position that pays a salary of $45,721.

"The comparative income of the spouses is another factor for the court to consider when evaluating an award of spousal support." *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 486 (Iowa 2012). Although the trial court divided the parties' property equally,[3] *see* Iowa Code § 598.21A(1)(c) (listing the property distribution as a consideration in awarding spousal support), David's earning capacity is significantly greater than Melissa's, *see Mann*, 943 N.W.2d at 21 ("[M]arked disparity of income is a relevant factor in considering the question of an award of alimony."). The court determined David's gross annual income at the time of trial was $304,288 compared to Melissa's gross annual income of $45,721. Melissa hopes to obtain a master's degree to increase her earning capacity, but the earliest she could complete the program would be 2026 or 2027. *See* Iowa Code § 598.21A(1)(e) (requiring the court to consider the time and training needed to enable the party seeking support to find appropriate employment). The only evidence about how much a degree would increase Melissa's salary is Melissa's

---

[3] David testified that he would need to refinance the mortgage to pay Melissa the $300,000 equalization payment provided in the property distribution. David's banker calculated refinancing the mortgage would increase his payments from $2370 per month to $3821 per month, although David did not know if this was based on a fifteen-year or thirty-year mortgage. In any event, the increase is reflected in his estimated monthly expenses, which we consider in determining his ability to pay.

testimony that it would increase "by a number of thousands of dollars." Even if her salary were to increase by $20,000, there would still be a substantial disparity between the parties' incomes.

We also note that David's net monthly income after paying $5000 in spousal support is $12,379, which is greater than his estimated monthly expenses of $12,172.[4] Melissa's net monthly income after receiving $5000 in spousal support is $8302. Although the precise amount of Melissa's monthly expenses is unclear, the evidence shows they exceed what she can pay on her salary alone. Melissa testified that she and David spent about $17,000 per month during the marriage, and she estimated their combined spending after separating to be $22,558 per month. Subtracting David's estimated monthly expenses from Melissa's estimated combined expenses equals $10,386.

David estimated that Melissa's expenses amount to $4342 per month or $52,104 per year. Although he estimated that some of Melissa's expenses are identical to his own (like the cost of cable, cell phones, and fuel), he estimated that others are considerably less. Most notably, David's expense list sets aside $1800 per month for charitable donations to his church while his list of Melissa's expenses includes only $100 for gifts and $100 for discretionary spending. David also estimates a $400 monthly expense for household supplies, laundry, and cleaning in his own budget while allocating only $150 to Melissa for household supplies and making no provision for laundry or cleaning. Finally, Melissa's expenses for

---

[4] Along with the refinanced mortgage payment of $3821, David's estimated monthly expense sheet lists a child-support payment that is nearly $900 higher the court ordered.

housing and a vehicle are not adequately represented in David's estimate. For example, David allocates $1100 for her housing, the amount Melissa paid to rent a three-bedroom home at trial. But Melissa testified the house had inadequate space for the children and expected an amply sized four-bedroom house would cost $350,000 to $400,000. Melissa also testified that she needed to purchase a new vehicle, which she anticipated would cost $600 to $700 per month, and no car payment is included in David's estimate of Melissa's monthly expenses. Even ignoring these deficiencies, Melissa's income cannot cover the expenses David estimates.

"[A] spousal support award is to be based on post-dissolution expenses to arrive at an amount that permits the spouse to maintain the past lifestyle." *In re Marriage of Stenzel*, 908 N.W.2d 524, 534 (Iowa Ct. App. 2018). An award of $5000 per month in spousal support provides Melissa with a standard of living closer to what she enjoyed during the marriage, which she cannot maintain on her earnings alone. *See* Iowa Code § 598.21A(1)(f) (listing "[t]he feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage" as a consideration in awarding spousal support). Because the evidence shows David can pay this amount while meeting his budget, the amount of spousal support awarded is not excessive.

Along with challenging the amount of spousal support awarded, David challenges its duration. The court ordered David to pay rehabilitative/reimbursement support for seven years, during which it would only

terminate if one party dies.[5]  The court then ordered David to continue paying $5000 per month in traditional spousal support, which would terminate if one party dies or Melissa remarries.  The parties were married twenty years, which is enough to "cross the durational threshold and merit serious consideration for traditional spousal support."  *Gust*, 858 N.W.2d at 410–11.  But more important to our determination is Melissa's need and David's ability to pay.  *See Stenzel*, 908 N.W.2d at 533 ("[T]he imposition of and length of an award of traditional spousal support is 'primarily predicated' on need and the ability to pay." (citation omitted)).  We have already noted that Melissa cannot earn enough to maintain a lifestyle like the one she had during the marriage, while David is able to pay $5000 per month and meet his monthly expenses.  On this basis, we affirm the award of spousal support.  *See Mauer*, 874 N.W.2d at 111 (allowing lifetime spousal support for a wife whose earnings would never allow her to maintain a standard of living comparable to what she enjoyed during the marriage).[6]

### IV. Appellate Attorney Fees.

Melissa requests an award of her appellate attorney fees.  Such an award is not a matter of right but rests in our discretion.  *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013).  In exercising this discretion, we consider the needs of the party seeking appellate attorney fees, the other party's ability to pay, and the merits of the claims made on appeal.  *See id.*  Considering the property

---

[5] For four years during this period, David must also pay child support: $602 for three children, $524 for two children, and $372 for one child.

[6] Although David notes that the decree does not provide for a reduction when Melissa becomes eligible for retirement, that matter is more appropriate to consider in a modification action once "retirement is imminent or has actually occurred." *Gust*, 858 N.W.2d at 418.

division and spousal-support award, we find the parties are each capable of paying for their appellate attorney fees.

**AFFIRMED.**