# IN THE COURT OF APPEALS OF IOWA

No. 24-1135
Filed March 19, 2025

IN RE THE MARRIAGE OF JUSTIN RYAN MINES
AND MICHAELLA ANN KINYON-MINES

Upon the Petition of
JUSTIN RYAN MINES,
        Petitioner-Appellant,

And Concerning
MICHAELLA ANN KINYON-MINES,
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Boone County, Angela L. Doyle,

Judge.


        A petitioner appeals the physical-care and spousal-support provisions of a

decree dissolving the parties' marriage. **AFFIRMED AS MODIFIED.**


        Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West

Des Moines, for appellant.

        Michaella Kinyon-Mines, Boone, self-represented appellee.


        Considered by Greer, P.J., and Buller and Langholz, JJ.

**LANGHOLZ, Judge.**

In dissolving the eight-year marriage of Justin Mines and Michaella Kinyon-Mines, the district court was faced with the difficult choice of selecting between two good parents to provide the physical care of their three children. The court ultimately placed the children in Michaella's physical care. And despite the parties' agreement that thirteen months of spousal support was appropriate for Michaella—long enough until the youngest child was in school and she could work full-time—the court awarded four years of transitional spousal support instead. Justin appeals the dissolution decree, challenging both decisions.

On our de novo review, giving appropriate deference to the district court's preferred position to assess the parties, we agree that the placement of the children in Michaella's physical care is in their best interests. While it remains a close call, we think the children's interest in consistency and stability tips the balance to continuing with the primary caregiver who had been serving them well.

But on his challenge to the spousal-support award, Justin is correct that the four-year award is inequitable. Not only is it longer in duration than generally appropriate for transitional spousal support, but we see no basis in the record to extend the award beyond the thirteen months requested by Michaella in the district court. So we modify the decree to award $1000 per month of transitional spousal support only until August 1, 2025. And we thus affirm the decree as modified.

## I.      Factual Background and Proceedings

Justin and Michaella married in April 2015. Justin served as a Marine and the couple moved to Hawaii for Justin's military assignment a few days after their wedding. They welcomed a daughter in 2016. The next year, Justin left military

service and the couple moved back to Iowa. There, both Justin and Michaella worked at the Woodward Resource Center and the daughter was in daycare.

In 2019, Michaella became pregnant with another daughter who was diagnosed in utero with a congenital heart defect, among other medical conditions. Michaella ultimately gave birth to the younger daughter in Omaha in April 2019, as that facility was better equipped to care for the daughter, including performing open-heart surgery a week after she was born. During this time, Justin could only take a few days off from work for the daughter's birth, so Michaella spent a month in Omaha with the younger daughter and learned to manage her care. Back at home, Michaella left her job at Woodward to care for both daughters during the day while Justin was at work. In 2020, the couple welcomed a son.

In 2021, Justin transitioned to a private-security position. Michaella also explored taking on additional work outside the home but ultimately raised the three children while Justin was at work.[1] The parties disputed Justin's activity with the children outside of work—Michaella testified that Justin would at times prioritize video games to relax after work rather than help with the children, while Justin insisted he always cared for the children.

Justin petitioned to dissolve the marriage in early 2023. A temporary-matters order placed the children in Michaella's physical care and provided Justin with visitation. After their separation, both Michaella and Justin resided with family—Michaella with her parents in Boone and Justin with his mother and sister nearby in Madrid. Michaella began working part-time as a special education

---

[1] Some evenings and weekends, Michaella earned extra income as a DoorDasher.

associate, and her mother watches the two younger children while she is at work. Justin hopes to find separate housing for himself and the children in Madrid and enroll the children in the Madrid schools rather than their current school in Boone. He testified that "[a]t most," he would consider "moving to Ankeny," but before any move he would consider how that might "affect the relationship between Michaella and our kids" and "what would be the best interests of them."

During a two-day hearing—at which Justin had an attorney and Michaella represented herself—the parties each sought physical care. Michaella also asked for spousal support until their youngest child started school in August 2025. And Justin agreed in his post-trial brief, proposing thar the court award monthly spousal support of $1000 until August 1, 2025.

The district court issued a dissolution decree in June 2024. Relevant here, the court found Michaella primarily cared for the children throughout the marriage, and the children would be best served by the stability and continuity of her care. So too did the court find stability in schooling relevant, noting that the older children would have to leave the Boone schools if placed with Justin. And the court expressed concern about Justin's testimony considering a possible move to Ankeny, which would reduce the chance for maximum continuing contact with both parents. So the decree placed the children in Michaella's physical care with liberal visitation for Justin.

As for spousal support, the court found Michaella had a high school education, the parties' childcare arrangement during the marriage took her out of the workforce for several years, and she "does not have sufficient income" or "liquid assets to transition from married life to single life without undue hardship. She is

leaving the marriage with a substantially lower earning capacity and earning history." After surveying the four categories of spousal support, the court found that transitional spousal support was equitable and ordered Justin to pay $1000 per month for four years.

Justin now appeals these physical-care and spousal-support provisions of the dissolution decree.[2]

## II. Physical Care

Justin challenges the decree's placement of the children in Michaella's physical care and asks that we instead place the children in his physical care. We review the district court's dissolution decree de novo. Iowa R. App. P. 6.907. But we give the district court's fact findings "weight and defer especially where the credibility of witnesses is a factor in the outcome." *Hora v. Hora*, 5 N.W.3d 635, 645 (Iowa 2024) (cleaned up). This deference is particularly important in dissolution cases, where the court's front-row seat to the parties' testimonies "greatly help[s]" the court "in making a wise decision about the parties" and their children. *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) (cleaned up).

When setting physical care, "[t]he most paramount consideration is the best interest of the children." *In re Marriage of Gravatt*, 371 N.W.2d 836, 838 (Iowa Ct. App. 1985). Children should be placed "in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). To that end, we are guided by the

---

[2] Michaella opted to forgo filing an appellee brief. *See* Iowa R. App. P. 6.901(1)(b).

factors in Iowa Code section 598.41 (2023) and *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). *See Gravatt*, 371 N.W.2d at 838.

As the district court noted in its thorough opinion, neither parent believed joint physical care was appropriate, and choosing where to place the children is a tough call. Indeed, many of the factors cut in favor of both parents—they both clearly love the children, would be safe and suitable custodians, are capable of meeting the children's needs, live within twenty minutes of each other, and would support the other's relationship with the children. Ultimately, the court found that Michaella's years of raising the children and being their primary caretaker "weigh[ed] heavily in favor" of the children staying in her care. And it found the geographic proximity of the parents was also in Michaella's favor because "the children would be required to change school districts if [physical] care is awarded to Justin" and because Justin considered moving to Ankeny, which "will certainly not avail itself to their children having maximum ongoing contact with each of them."

On appeal, Justin argues the court overlooked Michaella's habit of ignoring his communications about the children, minimized his active role in parenting the children, and placed too much weight on his testimony stating he thought about moving to Ankeny. On the last point, we agree. Prior to separation, the couple and their children were living in Ankeny. And Justin's testimony was not an unequivocal intent to move, as he clarified he hoped to stay in Madrid and would consider the children's needs before any future move. But even so, the potential move was only part of the court's analysis of the geography of the parties—and

we agree that avoiding the disruption in the children's schooling is properly weighed in Michaella's favor.

On the other two points, the court appropriately balanced the children's best interests. As for communication, Justin offered messages from a co-parenting app, which showed Michaella at times did not respond to his messages or provided less than complete information. But those messages also show many instances of them communicating well, and some instances of Justin interfering in the younger daughter's prescription refills. The court found that, on the whole, their communication difficulties did not result in any harm to the children and "will likely improve as the dust begins to settle following their divorce."

What's more, while Justin has exercised all visitation and helped care for the children during the marriage, it is undisputed that the children have spent most of their lives in the care of Michaella. And the children appear to be well cared for. The court specifically found Justin "appeared to amplify his complaints about Michaella for purposes of trial" in support of his effort to have physical care.[3] After hearing all of the testimony, the court found the children were best served by "the stability and continuity of caregiving provided to the children by Michaella." Ultimately, "[i]n such situations, where the child would do well in the care of either parent, the choice of physical care necessarily turns on narrow and limited grounds. When faced with close cases like this, we give careful consideration to the findings of the trial court." *In re Marriage of Rademacher*, No. 11-0789, 2011

---

[3] As another example, Justin's sister testified to contacting the Iowa Department of Health and Human Services to report Michaella's care of the younger daughter. The Department closed the complaint as unfounded.

WL 5868041, at *3 (Iowa Ct. App. 2011). And so, balancing the relevant factors, we agree that continuing physical care with Michaella best serves the children.

In reaching this decision, we emphasize that both parents share legal custody and have an ongoing responsibility to effectively communicate and share information about the children, regardless of physical care. And we stress the ongoing responsibility of both parents to foster the children's relationship with the other parent, including Michaella's duty to ensure Justin receives all visitation and parenting opportunities he is entitled to under the decree, including providing Justin opportunities to FaceTime, call, or text the children "at reasonable times" while they are in her care.

### III.    Spousal Support

Neither party to a marriage has "an absolute right" to spousal support. *In re Marriage of Mills*, 983 N.W.2d 61, 67 (Iowa 2022). But courts may award spousal support depending "on the particular facts and circumstances of each case." *In re Marriage of Pazhoor*, 971 N.W.2d 530, 537 (Iowa 2022). When setting an equitable spousal-support award, we are guided by the statutory factors in Iowa Code section 598.21A(1), and our caselaw "ordinarily places some degree of emphasis on the duration of the marriage and the earning capacities of the spouses." *In re Marriage of Mauer*, 874 N.W.2d 103, 107 (Iowa 2016). We review spousal-support awards de novo. Yet we will only "disturb" the court's determination "when there has been a failure to do equity." *In re Marriage of Sokol*, 985 N.W.2d 177, 182 (Iowa 2023) (cleaned up).

Iowa recognizes four types of spousal support: traditional, reimbursement, rehabilitative, and transitional. *Id.* at 185. "Each type of spousal support has a

different goal," and "[t]he amount and duration of a spousal support award should be tailored to achieve the underlying equitable purpose of the spousal support award." *Id.* (cleaned up). Traditional spousal support is appropriate in long marriages and provides permanent support to the spouse "comparable to what he or she would received if the marriage continued." *Pazhoor*, 971 N.W.2d at 543 (cleaned up). Reimbursement spousal support turns on "economic sacrifices made by one spouse during the marriage that directly enhance the future earning capacity of the other" and is appropriate when the spouse would not "otherwise be compensated for" the contributions. *Id.* at 544 (cleaned up). Rehabilitative spousal support is geared toward providing the spouse with "reeducation, retraining, or some discrete period of time to increase earning capacity to become self-supporting." *Sokol*, 985 N.W.2d at 186. And transitional spousal support is warranted when a spouse is capable of self-support but needs short-term assistance to "'bridge the gap' from married to single life." *Pazhoor*, 971 N.W.2d at 545.

During the dissolution proceeding, Michaella testified that she anticipated gaining full-time employment sufficient to meet her needs once the son begins school in the fall of 2025 and she no longer needed to stay home and care for him during the day. So while she did not specify the type of award, she requested $1000 per month in spousal support until the son began school. In his post-trial brief, Justin agreed—proposing the court award rehabilitative spousal support of $1000 per month until August 1, 2025.

Despite the apparent agreement between the parties, the district court found rehabilitative spousal support inappropriate, as neither party identified any

additional training or education that Michaella required to become self-sufficient. Traditional and reimbursement spousal support were also inapt because of the marriage's short duration and the lack of contributions toward Justin's earning capacity. Instead, the court found transitional spousal support best fit the parties' circumstances—Michaella could become self-sufficient but needed help transitioning single life. Yet the court extended that award beyond the thirteen months contemplated by the parties and ordered Justin to pay transitional spousal support for four years.

On our de novo review, we agree a transitional-spousal-support award is equitable here. But we see two problems with the decree's approach. First, transitional spousal support "should be short in duration," with a goal of bridging the gap rather than providing consistent support over several years. *Sokol*, 985 N.W.2d at 187. So transitional support awards "generally should not exceed one year in duration."[4] *Id.* The decree far exceeded that one-year guideline, imposing an award that provided for Michaella's needs long after the parties' adjustment to single life. *Id.* And second, the record does not support finding that Michaella requires four years of support to become self-sufficient. During the hearing, Michaella was unrepresented and provided limited testimony. But she did testify to anticipating obtaining full-time employment sufficient to cover her expenses once the son begins school in August 2025. She provided no other evidence suggesting she would require assistance beyond that time.

---

[4] On appeal, Justin retreats from his prior agreement to thirteen months of spousal support, instead requesting twelve months of transitional spousal support ending July 1, 2025, relying on *Sokol*'s general one-year limitation.

So some modification of the award is warranted. The thirteen-month period requested by Michaella is equitable. It is tailored to help Michaella transition to single life by providing assistance until her son begins school and she can return to full-time work. Yet it is not so long in duration as to defeat the short-term nature of the award. *See id.* (rejecting a seven-year transitional alimony award). Thus, we modify the decree to reduce the duration of Justin's spousal-support obligation to $1000 per month so that the final payment is due on or before August 1, 2025.

**AFFIRMED AS MODIFIED.**